GEORGE KIPPENHAN & another[1] *vs.* CHAULK SERVICES, INC.,
& others.[2]

Middlesex. May 5, 1998. - August 4, 1998.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, & MARSHALL, JJ.

*Negligence,* Ambulance, Manufacturer. *Evidence,* Expert opinion. *Practice,
Civil,* Loss of evidence. *Contract,* Settlement agreement. *Assignment.*

In an action for negligence and breach of implied warranty arising from the
    collapse of an ambulance stretcher, the summary judgment record did not
    demonstrate that the ambulance company's loss of the stretcher in question
    was spoliation of evidence such that evidence concerning the preaccident
    condition of the stretcher should have been excluded [126-128]; further,
    summary judgment should not have entered in favor of the manufacturer of
    the stretcher against the ambulance company on the basis of the exclusion
    of that evidence [128]; moreover, spoliation principles could not operate,
    in any event, to bar the injured plaintiffs from using such evidence, and
    summary judgment should not have entered in favor of the manufacturer
    on the plaintiffs' claims [128].

In an action for negligence and breach of implied warranty in the design,
    manufacture, and sale of an ambulance stretcher, wherein the plaintiffs
    settled their claims against some of the defendants just before those parties
    filed a successful appeal from a grant of summary judgment in favor of the
    remaining defendant, the matter was remanded for consideration of issues
    of spoliation, validity of the assignment of the plaintiffs' claims, and the
    assertion of assigned rights against a joint tortfeasor. [128-131]

CIVIL ACTION commenced in the Superior Court Department on
December 29, 1992.

A motion for summary judgment was heard by *Barbara A.
Dortch-Okara,* J., and entry of judgment as to the remaining
claims was ordered by *Sandra L. Hamlin,* J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

---

[1]Carol Kippenhan.

[2]Richard Cicchese, Eugene Reynolds, administrator of the estate of Paul
Reynolds, and Ferno-Washington, Inc. (Ferno). The other defendants added
Ferno as a third-party defendant. The plaintiffs later added Ferno as a
defendant.

*Martin L. Aronson* for the plaintiffs.

*John A.K. Grunert* for Chaulk Services, Inc., & others.

*Thomas M. Elcock* for Ferno-Washington, Inc.

WILKINS, C.J. On June 5, 1992, Richard Cicchese and Paul Reynolds, employees of the defendant Chaulk Services, Inc. (Chaulk), transported the plaintiff George Kippenhan (Kippenhan) by ambulance from New England Baptist Hospital to New England Deaconess Hospital for radiation therapy. While they were trying to put Kippenhan in the ambulance, the ambulance stretcher, manufactured by the defendant Ferno-Washington, Inc. (Ferno), collapsed. Kippenhan fell and allegedly was injured.

The plaintiffs claim that the fall was caused by the negligence of Chaulk and its ambulance attendants and by Ferno's negligence and breach of implied warranty in the design, manufacture, and sale of the stretcher. In a third-party complaint, Chaulk and the ambulance attendants seek indemnification and contribution from Ferno in the event they are liable to the plaintiffs.

Discovery disclosed that Chaulk was unable to find the stretcher used to transport Kippenhan and could not identify its serial number. Chaulk could only identify it as a particular model of Ferno stretcher. Over several decades Ferno has made substantial changes in the particular stretcher model involved. There is no evidence that Chaulk lost the stretcher intentionally.

This appeal concerns the propriety of a Superior Court judge's allowance of Ferno's motion for summary judgment against all other parties, based on Chaulk's loss, that is its spoliation, of the stretcher. The judge determined that, because Chaulk lost the stretcher, the testimony of the ambulance attendants concerning the stretcher's condition prior to the accident should be excluded. The judge granted summary judgment against Chaulk because, in the absence of that testimony, Chaulk could not prove that the stretcher had been properly handled after leaving Ferno's control. See *Coyne* v. *John S. Tilley Co.*, 368 Mass. 230, 237 (1975).

The judge's ruling did not explicitly state whether the order excluding evidence applied only to Chaulk or whether the restriction also applied to the claims of the plaintiffs and of the ambulance attendants. Neither of these parties had participated in the proceedings that led to the order excluding testimony

concerning the preaccident condition of the stretcher. When the plaintiffs and the ambulance attendants sought clarification concerning the scope of the order, the judge ruled that the testimony "as to the pre-accident condition of the stretcher is excluded for all purposes." The Kippenhans, Chaulk, and the ambulance attendants have appealed from the entry of summary judgment in favor of Ferno on all their claims against it. We transferred the appeals here on our own motion.

One issue on appeal is whether Chaulk's loss of the stretcher has been shown, on the summary judgment record, to constitute spoliation, thus making Chaulk properly subject to (a) the exclusion of evidence concerning the preaccident condition of the stretcher and (b) the entry of summary judgment in Ferno's favor. We conclude that Ferno has not shown that there is no dispute of material fact as to whether Chaulk should be subject to an exclusion order. Another issue is whether, if Chaulk is a spoliator, the claims of the Kippenhans and the ambulance attendants against Ferno should also have been dismissed.

We conclude that there was no basis for dismissing the Kippenhans' claims against Ferno on the ground that Chaulk is a spoliator. The status of the Kippenhans' claims against Ferno and the ambulance attendants' claims against Ferno for indemnification and contribution is affected by the fact that, since summary judgment was entered, the Kippenhans have settled their claims against Chaulk and the ambulance attendants. We shall discuss consequences of that settlement after deciding the appropriateness of the award of summary judgment to Ferno on all claims against it based on Chaulk's alleged spoliation.

1. An expert's testimony should be excluded if the expert changes, destroys, or loses an item of physical evidence "in such circumstances that the expert knows or reasonably should know that that item in its original form may be material to litigation." *Nally* v. *Volkswagen of Am., Inc.*, 405 Mass. 191, 197 (1989). In the *Nally* case, Nally's accident reconstruction expert, retained to assist in presenting Nally's claim against the defendant, knew that the item that he allegedly spoliated might be material to the litigation. See *id.* at 192. The court stated that "[t]he reason for the rule is the unfair prejudice that may result from allowing an expert deliberately or negligently to put himself or herself in the position of being the only expert with first-hand knowledge of the physical evidence on which expert

opinions as to defects and causation may be grounded." *Id.* at 198.

In *Bolton* v. *Massachusetts Bay Transp. Auth.*, 32 Mass. App. Ct. 654 (1992), after litigation had commenced, the defendant disposed of a bus which allegedly had defective brakes, which were asserted to have been the cause of a collision that resulted in the death of the plaintiff's intestate. *Id.* at 655. The Appeals Court extended the principle of the *Nally* case to a party that destroyed physical evidence after its expert had inspected it. The Appeals Court upheld a trial judge's order precluding the defendant's expert from testifying. *Id.* at 656-657.

The rule excluding evidence as a remedy for spoliation is based on both the unfair prejudice that would otherwise result and the fact of a negligent or intentional destruction of physical evidence. Spoliation, therefore, does not include a fault-free destruction or loss of physical evidence. The motion judge ruled that the ambulance attendants' testimony regarding the pre-accident condition of the stretcher must be excluded because of the spoliation rule. Her ruling was not based solely on a discretionary determination that such testimony, although relevant, should be excluded on unfair prejudice grounds.

Sanctions may be appropriate for the spoliation of evidence that occurs even before an action has been commenced, if a litigant or its expert knows or reasonably should know that the evidence might be relevant to a possible action. See *Nally* v. *Volkswagen of Am., Inc.*, *supra* at 197-198; *Lewy* v. *Remington Arms Co.*, 836 F.2d 1104, 1112 (8th Cir. 1988); *Fire Ins. Exch.* v. *Zenith Radio Corp.*, 103 Nev. 648, 651 (1987). The threat of a lawsuit must be sufficiently apparent, however, that a reasonable person in the spoliator's position would realize, at the time of spoliation, the possible importance of the evidence to the resolution of the potential dispute.

The summary judgment record does not show that there is no dispute of material fact as to when Chaulk knew or reasonably should have known that the Kippenhans might sue it. The exclusion of evidence concerning the preaccident condition of the stretcher, based on spoliation principles, could not be justified if the stretcher was destroyed, lost, or otherwise disposed of before Chaulk knew or reasonably should have known of the possibility of a suit. This means that Chaulk can be a spoliator for any action or inaction concerning the disappearance of the stretcher only after it knew or reasonably should have known that the

condition of the stretcher might be important to its defense against the Kippenhans or to any claim against Ferno for contribution or indemnity. Because the undisputed material facts do not show when Chaulk knew or reasonably should have known that the Kippenhans might sue it, summary judgment should not have been granted in favor of Ferno against Chaulk.

Our rule excluding evidence as a sanction for the spoliation of physical evidence is a minority position. See *Beers* v. *Bayliner Marine Corp.*, 236 Conn. 769, 775 (1996). Most jurisdictions that have considered the question have adopted a less severe rule, holding simply that "the trier of fact may draw an inference from the intentional spoliation of evidence that the destroyed evidence would have been unfavorable" to the spoliator. *Id.* We are aware of no jurisdiction that has suppressed a party's evidence or drawn an adverse inference against a party where neither that party nor anyone acting on that party's behalf was the spoliator.[3] Thus, even if Chaulk is a spoliator, spoliation principles do not bar the Kippenhans from using the ambulance attendants' testimony concerning the pre-accident condition of the stretcher. The Kippenhans did not cause the loss or disappearance of the stretcher, and, therefore, they were not at fault in its loss. The judge should not have barred the Kippenhans on spoliation principles from the use of Reynolds's testimony concerning the pre-accident condition of the stretcher and should not have entered summary judgment in favor of Ferno against the Kippenhans.

2. The Kippenhans have settled their claims against Chaulk and the ambulance attendants and have agreed to pay Chaulk's insurer a portion of any recovery that they may obtain against Ferno. An order approving the dismissal of the settled claims appears in the record appendix. That order was entered shortly before Chaulk, the ambulance attendants, and the Kippenhans filed their notices of appeal from the grants of summary judgment in favor of Ferno. A single justice of the Appeals Court ordered the appellants to produce a copy of the settlement agreement, with dollar amounts redacted, for review by Ferno and

---

[3]There is dictum in *Nally* v. *Volkswagen of Am., Inc.*, 405 Mass. 191, 198 (1989), concerning spoliation in the unlikely circumstance of an expert's altering or destroying evidence before being retained by a party to the litigation. The court said that an expert's spoliation of evidence, even before association with any party, should bar the expert from testifying to the condition of the physical evidence that he or she destroyed or disposed of. Circumstances might make inappropriate the application of such a hard and fast rule.

left to the panel that would decide the appeal whether to expand the record to include the settlement agreement and related documents.

The appellants' initial briefs make no mention of the settlement and thus give no consideration to its consequences, including its possible effect on the issues the appellants have raised here. Ferno wants us to open the record to include the settlement documents and to declare invalid the agreement to pay Chaulk's insurer a portion of any recovery on the appellants' personal injury claims against Ferno. We allow the motion to expand the record and shall discuss certain issues presented by the settlement arrangement. We shall not, however, attempt to decide all issues possibly arising from the settlement. Some are of wide import, and the manner in which the issues have been presented to us has given interested groups no effective opportunity to file amicus briefs. Moreover, we cannot be confident that there are no unresolved material facts that might be important in deciding the impact of the settlement agreement.

The agreement states that, assuming any appellant were successful in this current appeal, the surviving claim or claims against Ferno are to be pursued at the expense of the insurer of Chaulk and its ambulance attendants. If there were any recovery, after payment of the insurer's litigation expenses, the insurer would receive seventy percent of the proceeds (up to a maximum amount) and the balance would go to the Kippenhans. The insurer reserved the right to settle the various claims and agreed to pay all the expenses of the litigation. If the insurer should exercise its right to terminate the litigation, the Kippenhans could pursue the matter on their own, but any recovery would be shared as just stated.

If Chaulk is determined to be a spoliator, neither Chaulk nor its insurer, which stands in Chaulk's shoes, should be permitted to receive any portion of any recovery against Ferno, including a portion of any recovery by the Kippenhans. Chaulk may not neutralize its status as a spoliator by recovering against Ferno through the Kippenhans. The ambulance attendants have been fully protected by the settlement, and Chaulk's insurer, which provided them coverage, should not be permitted to rely on their claims for contribution from Ferno to circumvent Chaulk's

status as a spoliator. If, however, Chaulk is not a spoliator, its insurer may pursue its insureds' claims for contribution and indemnity against Ferno.[4]

Ferno argues that the settlement involves an impermissible assignment of a personal injury claim and is void. We have held that "[a] claim for personal injury cannot be assigned . . . ." *General Exch. Ins. Corp.* v. *Driscoll*, 315 Mass. 360, 363-364 (1944), and cases cited. There may be reasons why that rule, not recently tested, should be modified. The appellants do not discuss the possible significance of the fact that any assignment involved in the settlement is of the proceeds of an action and not of a claim itself. Some courts have thought the distinction significant, allowing an assignment of proceeds but not of a claim. See *Hernandez* v. *Suburban Hosp. Ass'n*, 319 Md. 226, 233-234 (1990); *Achrem* v. *Expressway Plaza Ltd. Partnership*, 917 P.2d 447, 449 (Nev. 1996); Annot., Assignability of Proceeds of Claim for Personal Injury or Death, 33 A.L.R.4th 82, § 3[a] (1984 & Supp. 1997).

The question whether a plaintiff's agreement to pay a share of the proceeds of a claim to a settling tortfeasor's insurer is valid has not been adequately briefed. In particular, the question is not sufficiently addressed whether an insurer may properly settle a claim and take from the plaintiff an assignment of, or agreement to pay over, proceeds of a claim against a non-settling joint tortfeasor. Policies underlying our law governing contribution by joint tortfeasors (G. L. c. 231B) may not permit a settling insurer effectively to assert rights against a joint tortfeasor beyond the insured joint tortfeasor's right of contribution. See *Alder* v. *Garcia*, 324 F.2d 483, 485 (10th Cir. 1963). Cf. *Vermont Union Sch. Dist. No. 21* v. *H.P. Cummings Constr. Co.*, 143 Vt. 416, 430 (1983).

Ferno also argues that the agreement is void as a "Mary

---

[4]It is unlikely that Chaulk or its ambulance attendants have a sound claim for indemnification against Ferno. See *Elias* v. *Unisys Corp.*, 410 Mass. 479, 482 (1991) ("Indemnity . . . allows someone who is without fault, compelled by operation of law to defend himself against the wrongful act of another, to recover from the wrongdoer the entire amount of his loss . . . ."). It is hard to imagine how either Chaulk or its employees could be held derivatively or vicariously liable for any wrongful act of Ferno. See *Decker* v. *Black & Decker Mfg. Co.*, 389 Mass. 35, 40 (1983).

Carter" agreement.[5] Although some jurisdictions have banned Mary Carter agreements (see *Lum* v. *Stinnett*, 87 Nev. 402 [1971]; *Cox* v. *Kelsey-Hayes Co.*, 594 P.2d 354, 360 [Okla. 1978]), most jurisdictions do not view such agreements as per se invalid. Most courts analyze them cautiously on a case-by-case basis. See *Vermont Union Sch. Dist. No. 21* v. *H.P. Cummings Constr. Co.*, *supra* at 429, and cases cited.[6] A Mary Carter agreement is most commonly described as a contract in which one or more defendants (1) agree to remain in the case, (2) guarantee the plaintiff a certain minimum monetary recovery regardless of the outcome of the lawsuit, and (3) have their liability reduced in direct proportion to the increase in the liability of the nonagreeing defendant or defendants. See *Cox* v. *Kelsey-Hayes Co.*, *supra* at 357; *Vermont Union Sch. Dist. No. 21* v. *H.P. Cummings Constr. Co.*, *supra* at 426-427. Chaulk and its employees did not agree to stay in the case as defendants; nor has the fact that there was a settlement been kept secret. The settlement is not a Mary Carter agreement.[7] The question whether it would be unfair to enforce the settlement for reasons beyond those mentioned earlier in this opinion, concerning the assignment of claims, can be considered fully on remand.

3. The summary judgments in favor of Ferno-Washington, Inc., are vacated. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

[5]The term comes from the characterization of the settlement in *Booth* v. *Mary Carter Paint Co.*, 202 So. 2d 8 (Fla. Dist. Ct. App. 1967). See *Ward* v. *Ochoa*, 284 So. 2d 385, 386 (Fla. 1973).

[6]The most frequent response of courts faced with Mary Carter agreements is to require their disclosure to the jury. See *General Motors Corp.* v. *Lahocki*, 286 Md. 714, 728 (1980); *Grillo* v. *Burke's Paint Co.*, 275 Or. 421, 426 (1976).

[7]We have only once before mentioned a Mary Carter agreement. We did so where a nonsettling defendant claimed that a settlement agreement was a Mary Carter agreement and unfair. See *Franklin* v. *Guralnick*, 394 Mass. 753, 755 (1985). We concluded that the settlement agreement was not unfair and did not discuss Mary Carter agreements. *Id.*