McDonald, J.
This is an action for professional negligence arising out of the alleged use of nonsterile surgical instruments during surgeiy performed on Linda Munsinger (“Munsinger”) while she was a patient at the Berkshire Medical Center (“BMC”). The plaintiffs have moved for sanctions against certain defendants for their failure to comply with an order by this court to produce certain evidence relating to the sterility of the surgical instruments.[3] Because this court heard extensive argument regarding the motion to compel, including exhibition of facsimile equipment and packaging, no hearing is necessary on this motion.[4] After consideration of the previous arguments and demonstrations, the plaintiffs’ motion, the defendants’ opposition, and discussion in a telephone conference with counsel for each party on October 7, 1998, the plaintiffs’ motion is ALLOWED IN PART and DENIED IN PART.
BACKGROUND
Munsinger underwent back surgery at BMC on July 23, 1993. While the surgery was in process, a question arose whether instruments in a sterile storage area were in fact sterile. As a result of this question, BMC staff went to the operating room to determine the status of the tympanoplasty instruments being used in Munsinger’s surgery. The instruments in question had already been used. Examination of the instrument packaging, specifically three distinct sterility indicators, was nonconclusive. The surgeons changed their gowns and gloves, flushed the surgical area with an antibiotic solution, and requested a consultation with an infectious disease specialist. Munsinger was advised of the problem when she awakened from the surgery. Subsequent to her surgeiy, she suffered an infection at the surgical wound that required re-hospitalization and produced various medical consequences.
The instruments in question were packaged in an outer wrapper of cloth, to which a sterility indicator (the “first indicator”) was affixed, and inner package (referred to as a peel pouch), to which a sterility indicator (the “second indicator”) also was affixed. A third sterility indicator (the “third indicator”) was located inside the peel pouch with the instruments.[5] When concern for the sterility of the instruments was *487 reported to the surgical team, the packaging was examined, but the sterility indicators were inconsistent.[6] According to Ostrowski, the outer package indicator had changed color from yellow to brown — not to red as would be expected. Another BMC staff person described the color as a shade of red less vibrant than would be expected. Ostrowski described the second indicator as having changed to yellow, which was the expected change. The defendant Gaudette testified that the second indicator had changed color indicating sterility. There is no dispute that the third indicator had not changed color. The fate of the packaging and the sterility indicators is unknown. Ostrowski testified that she had discarded the cloth wrap and the first sterility indicator, but retrieved the first indicator and gave it to the BMC’s director of surgical services. The director did not recall this event. There is no suggestion as to what became of the peel pouch containing the second sterility indicator or the third sterility indicator that was inside the peel pouch. Gaudette testified that she left these items on a table in the operating room. Following the surgeiy, Ostrowski met with someone from the BMC risk management unit and filled out an incident report. At least one other BMC staff member filled out an incident report. The BMC risk manager spoke to the hospital’s malpractice insurance company this same day.
The plaintiffs have been diligent and vigorous in pursuing the trail of the packaging and the sterility indicators. 111611 efforts have been unavailing. The trail of the packaging containing the first sterility indicator led to BMC’s risk manager and faded into oblivion. The trail of the peel pouch and the second and third sterility indicators started and ended in the operating room. A certain sterility indicator was produced by the BMC, pursuant to the plaintiffs’ discovery request, and was represented to be the first sterility indicator from the instruments used during Munsinger’s surgery. Subsequently, BMC denied that the sterility indicator produced was that from the instruments used during the Munsinger surgery. BMC has refused to explain the reason for its inconsistent discoveiy responses, citing attorney-client privilege.
DISCUSSION
Rule 37(b)(2), Mass.R.Civ.P. provides for sanctions against a parly for failure to comply with discoveiy obligations imposed by rule or order of the court. The sanctions available include orders designating facts to be taken as established, refusing to allow claims or defenses to be supported, striking pleadings, and dismissing the action. The plaintiffs seek default against BMC as to liability and causation and striking BMC’s charitable immunity defense, or default against BMC, Ostrowski, and Gaudette as to liability and causation.
Consideration of whether the sanctions sought by the plaintiffs are warranted is not grounded upon the defendants’ willful disregard of the court’s order compelling discovery,[7] but is grounded upon the defendants’ inability to comply due to the loss of evidence.[8] That being so, the issue then becomes whether the inability to comply was result of spoliation of evidence.[9]
Sanctions may be appropriate for the spoliation of evidence that occurs even before an action has been commenced, “if a litigant . . . knows or reasonably should know that the evidence might be relevant to the possible action.” Kippenhan v. Chaulk Services, Inc. 428 Mass. 124, 127 (1998) (citing Nally v. Volkswagen of America, Inc., 405 Mass. 191, 197-98 (1989)). “The threat of a lawsuit must be sufficiently apparent, however, that a reasonable person in the spoliator’s position would realize, at the time of the spoliation, the possible importance of the evidence to the resolution of the potential dispute." Id. at 197.
In my view, there is no question that employees of BMC were aware of the critical importance of sterility in the operating field and the grave consequences of the introduction of nonsterile instruments and equipment into such field. These consequences were both medical and legal. I also conclude that BMC’s employees also were aware of the critical significance of the sterility indicators to the resolution of a potential dispute, i.e. a lawsuit, in the event that nonsterile instruments caused infection or other medical complications. Indeed, BMC staff members made reports to the risk management unit and the risk manager communicated with BMC’s malpractice insurance carrier the very same day. In my view, although no cause of action had accrued on the day of surgeiy (as no consequence of the use of nonsterile instruments was apparent), BMC staff members and the surgical team clearly were concerned for the consequences of the use of nonsterile instruments. No doubt they all hoped that, regardless of the sterility or lack thereof, Munsinger would recover from the surgeiy without infection or other complication. But while they held their breaths, they had a duty to preserve and protect the evidence that went to the heart of the issue of the defendants’ liability, the sterility indicators. The risk manager’s same-day call to the hospital’s malpractice carrier demonstrates that the risk manager immediately recognized the legal risk, i.e. the potential of a lawsuit. Accordingly, BMC’s failure to preserve and protect the sterility indicators constitutes spoliation of evidence.
There remains the issue of the appropriate sanction for the spoliation. The plaintiffs seek default on liability and causation and striking of BMC’s charitable liability defense. Neither sanction is warranted. Unlike Dylan Keene v. Brigham & Women’s Hospital, Superior Court, Norfolk, No. 951081, September 30, 1997 (Connolly, J.), 7 Mass. L. Rftr. No. 21, 474 (Dec. 8, 1997), relied upon by the plaintiffs, the spoliation of evidence here does not prevent a determination of who, if anyone, was negligent. The persons responsible for sterilizing, storing, transporting, examining, opening, presenting, and using the instruments is known. The relationship of each of those persons to BMC also is *488 known. Thus, there is no need to strike the charitable immunity. Furthermore, the missing evidence goes to the issue of negligence, i.e. whether nonsterile instruments were used. Even if that issue is resolved in the plaintiffs’ favor, causation and liability do not automatically follow. Thus, there is no need to default the defendants as to causation and liability.
In Massachusetts, the appropriate sanction for spoliation of evidence is the exclusion of testimony about that evidence.[10] Kippenhan v. Chaulk Sewices, Inc., 428 Mass. at 126-27. In Kippenhan, the plaintiff, who was injured when a stretcher collapsed while he was being placed in an ambulance, and his wife brought an action against the ambulance company and the ambulance attendants. These defendants brought a third-party action against the manufacturer of the stretcher (seeking indemnification), and the plaintiffs added the manufacturer as a defendant. The manufacturer moved for summaiy judgment against the plaintiffs and the third-party plaintiffs because the ambulance company had unintentionally disposed of the stretcher. The manufacturer’s motion was allowed after the trial court determined that the ambulance attendants would not be allowed to testify concerning the condition of the stretcher prior to the accident and, absent such testimony, the ambulance company would not be allowed to prove that the stretcher had been handled properly. The court also allowed the manufacturer’s summary judgment motion against the plaintiffs.
The Supreme Judicial Court affirmed the principle that exclusion of evidence is an appropriate sanction for spoliation as to the spoliator, but held that there was a material issue of fact regarding whether the ambulance company was a spoliator. Id., at 126. Accordingly, the Court reversed the award of summary judgment against the ambulance company. Id. at 131. The Court also reversed the award of summary judgment against the plaintiffs and the attendants because exclusion of evidence was not appropriate “where neither [they] nor anyone acting on [their] behalf was the spoliator.” Id. at 128.
Applying the Kippenhan analysis to the instant motion, I conclude that BMC is a spoliator because it was responsible for the intentional or negligent destruction or loss of evidence at a time when it knew or should have known of the possibility of suit. Accordingly, exclusion of evidence is an appropriate sanction. I also conclude that BMC was acting on behalf of Gaudette and Ostrowski regarding the handling of the packaging and the sterility indicators.
As to Ostrowski, she testified that she gave the outer packaging sterility indicator to the supervisor of surgical services. Thus, she relied upon BMC to be the custodian of the evidence for which she was personally responsible. As to Gaudette, she testified that she left the peel pouch indicator and the inner indicator on a table in die operating room. Thus, she, by implication, relied upon BMC to preserve or discard the evidence as it chose. Preservation of the inner indicator, which suggested that she was negligent, was not in Gaudette’s personal interest. Both Gaudette and Ostrowski knew or should have known of the potential for legal action if the use of nonsterile instruments resulted in infection or other complications. I further conclude that Gaudette and Ostrowski are protected by BMC’s insurer. Until September 9, 1998, all the defendants were represented by the same lawyer or lawyers. Furthermore, the defendants filed a joint answer, jointly opposed the motion to compel, and jointly opposed this motion for sanctions. In addition, in signing the opposition to this motion for sanctions, entitled “Opposition of the Defendants.” counsel signed the paper on behalf of “The Defendant, Berkshire Medical Center.” Accordingly, as it appears that BMC’s insurer is providing coverage for the individual defendants, it should not be permitted to rely on their presence as parties to circumvent BMC’s status as a spoliator. For this reason, the exclusion of evidence also warranted as to the claims against Ostrowski and Gaudette. See Kippenhan 428 Mass. at 129-30.
The appropriate exclusion in this case is of that evidence upon which the defendants rely to suggest that the instruments had been sterilized — the first and second sterility indicators. Accordingly, the defendants are prohibited from introducing any evidence, whether testimonial, documentary, or tangible, regarding the existence of sterility indicators. This prohibition includes testimony of the appearance of the indicators which accompanied the instruments at issue.[11] Accordingly, pursuant to Rule 37(b)(2)(A), it shall be taken as established that the tympanoplasty instruments brought to operating room by Ms. Ostrowski and used during the surgery were not sterile, and that BMC,[12] Gaudette, and Ostrowski were negligent in introducing the nonsterile instruments into the surgical field.[13]
ORDER
It is hereby ordered that the Plaintiffs’ Motion For Sanctions is ALLOWED IN PART and DENIED IN PART. It shall be taken as established that the fympanoplasfy instruments brought to the operating room by the defendant Ostrowski were not sterile, and that BMC, Gaudette, and Ostrowski were negligent in introducing the nonsterile instruments into the surgical field.

 The plaintiffs seek to have a default entered against the defendant BMC as to liability and causation and to strike the charitable immunity defense asserted by it pursuant to G.L.c. 231, §85K, or, in the alternative, to have a default entered against the defendants BMC, Josephine Gaudette, and Joan Ostrowski as to liability and causation. No sanction is sought against Diane Mele.

The motion to compel was a prelude to the instant motion per Mass.RCiv.P. 37. At the time of the hearing on the motion to compel it was clear that the defendants were unable to comply with the order. Production of the documents and *489 tangible objects sought by the plaintiffs was, according to the defendants, impossible because the evidence was not in the possession of the defendants. I am not persuaded that it is otherwise.

The defendant, Joan Ostrowski (“Ostrowski”), took the instrument package from the storage area, brought it to the operating room, and opened the outer packaging. The defendant, Josephine Gaudette (“Gaudette”), opened the inner package and handed the instruments to the surgeon. Both had responsibility to examine the sterility indicators.

The sterility indicators change color when the instruments are sterilized. If all is well, the color change is dramatic and not subject to uncertainty of interpretation.

My order compelling the defendants to comply with discovery requests regarding the instrument packaging and sterility indicators was not based upon a determination that the defendants were willfully failing to produce the requested evidence. Rather, I was satisfied that there was an inability to produce the requested evidence, but believed the order was a prerequisite for the instant motion.

The plaintiffs argue that the packaging and steriliiy indicators constitute medical records which BMC had an obligation to preserve pursuant to G.L.c. Ill, §70. I do not agree.

 Spoliation of evidence may result from both intentional and negligent destruction or loss of evidence, but does not result from fault-free destruction or loss. Kippenhan v. Chaulk Services, Inc., 428 Mass. 124, 127 (1998). Relying upon this definition, I need not determine whether the destruction or loss of evidence was done willfully or in bad faith, but only whether it was with or without fault. As discussed infra, I conclude that the loss of evidence was not without fault.

Most jurisdictions have adopted a less severe rule permitting the trier of fact to draw an inference from the intentional spoliation of evidence that the evidence would have been unfavorable. Kippenhan v. Chaulk Services, Inc., 428 Mass. at 128.

This exclusion includes evidence regarding the third indicator, which indicated that sterilization had not occurred. Introduction of this evidence, though favorable to the plaintiff, would not be in context, might confuse a jury, and would risk inadvertent disclosure of evidence specifically excluded as sanction for the spoliation of evidence.

Assuming, of course that BMC has been proved to be vicariously liable for the conduct of Gaudette and Ostrowski or otherwise owing a duty to the plaintiffs.

If the defendants are able to satisfy the trial judge, by a good faith offer of proof in limine, that they have evidence to prove that the instruments were sterile, notwithstanding the fact that the third indicator indicated nonsterility, the judge may modify this order to allow evidence regarding the third indicator while excluding evidence regarding the appearance of the first and second indicators. In such circumstance, it should be taken as true that the first and second indicators did not indicate sterility. If the trial judge is satisfied with the defendants’ offer of proof, negligence would be a question for the jury, and it would not be appropriate to take as established that the defendants were negligent. I note, however, that, in answer to interrogatories, BMC stated that it “assume[d] that the inside indicator did not change color when the instruments were subjected to the sterilization process.” I infer that, at least at the time the interrogatories were answered, BMC had no such evidence.