Hillman, J.
This is a products liability action in which the plain tiffs, Patricia Morin (Morin) and Gregg Dawson (Dawson), allege that defendant, Holmes Products Corporation (Holmes) negligently manufactured a fan that was sold by defendant Kmart Corporation (Kmart) and that the defective fan caused a fire in their residence in Haverhill, Massachusetts. The plaintiffs’ insurer filed a subrogation action seeking reimbursement of the approximately $235,000.00 that they paid to the plaintiffs under their homeowners insurance policy.[3] Both parties have filed motions seeking sanctions for the alleged spoliation of evidence by the other party. For the reasons stated below, both defendants’ and plaintiffs’ motions are DENIED.
BACKGROUND
Plaintiff Morin owned a two-family home located at 38 Crystal Street in Haverhill, Massachusetts that was destroyed by ñre on July 4, 1994.[4] Initially, several officials from the town attempted to determine the cause of the fire. Haverhill Fire Department Lieutenant Norman Tellier supervised the investigation of the fire’s cause and origin. In addition to Lt. Tellier, another member of the fire department, Lieutenant Michael Akstin, and the Town of Haverhill’s wiring inspector, Edward DuFresne, examined the property following the fire and posited several theories on the origins of the fire. Lt. Tellier visited the property on several occasions during the month of July 1994. Mr. DuFresne visited on three occasions, the final time on July 7, 1994. On or about July 12, 1994, Mr. DuFresne wrote a report attributing the cause of the fire to a faulty fan, which is the subject of the plaintiffs’ complaint. The two members of the fire department, while not discounting the possibility that the fan caused the fire, did investigate other sources such as a refrigerator, dryer, and some electrical outlets as being potential causes of the fire. The plaintiffs’ public insurance adjuster, Thomas Sheehan, also visited the property and met with an insurance representative and observed the debris, but took no inventory or photographs.
A July 8, 1994 interoffice memo authored by an employee of the plaintiffs’ insurance company indicated that “. . . although a fire marshall’s report has not yet been received, it is suspected that a clothes dryer may be the cause of this extensive fire.” On July 25, 1994 the plaintiffs’ insurers’ lead investigator, John Mulcahy, obtained the fan for inspection. The refrigerator, dryer, and other “suspects” were not so preserved.
Presumably Mr. Mulcahy tested the fan and came to the conclusion that the fan caused the fire, because on February 16, 1995 the plaintiffs’ insurance company notified the defendants that they intended to hold them responsible for the loss. On August 31, 1995, the defendants’ insurance company was given the fan so that *413 they could inspect and test it. To further complicate matters, the defendants have been unable to produce any documents or blueprints for the fan and have also been unable to produce an exemplar of the fan.
Because agents for the plaintiffs’ insurer did not preserve the other suspected causes of the fire such as the dryer and refrigerator, the defendants seek sanctions for spoliation; they specifically want the court to exclude the testimony of Mr. Mulcahy. Alternatively, they ask the court to give an instruction to the jury on spoliation. The plaintiffs seek similar sanctions against the defendants for their failure to preserve blueprints, documents, or an exemplar of the fan in question. That issue was dealt with, however, when this court considered the plaintiffs’ motion to compel production of those documents earlier in the litigation. The motion was initially allowed and the defendants filed a motion to reconsider. Allowing the motion to reconsider, the court (Burnes, J.) referred to both motions in its decision to deny the motion to compel production of documents. Judge Burnes also determined the issue of the admissibility of the blueprint and design evidence, holding that, “(t]he court has reconsidered its allowance of this motion on request of the defendant Holmes, who had timely served an opposition on the plaintiffs. Upon reconsideration, based on the affidavit of Thomas Turner of Holmes, the court denies this motion. The court further orders that, because Turner avers that the documents, i.e. blueprints for the CEH2241 fan and detail (sic) drawings do not exist, Holmes may not offer such documents or testimony based on them, in the trial of this case.” As Judge Burnes effectively granted the relief that the plaintiffs are requesting in their motion for sanctions, this court denies the plaintiffs’ motion.
DISCUSSION
The general rule followed in the Commonwealth is that all relevant evidence is admissible unless within an exclusionary rule. Poirier v. Plymouth, 374 Mass. 206 (1978), Nally v. Volkswagen of America, Inc., 405 Mass. 191 (1989). Nally provides the basis for exclusion of an expert witness’s testimony if the expert changes, destroys, or loses an item of physical evidence “in such circumstances that the expert knows or reasonably should know that that item in its original form may be material to litigation.” Nally, supra at 197. The principal reason for the possibility of such a sanction is the unfairness that would result from allowing an expert to place themselves in a position where they are the only ones with first hand knowledge about the spoiled evidence. Id. at 198. In this case, the allegedly offending fan has been preserved.
What this court must decide is what obligation the plaintiff had to preserve evidence which is not the focus of this lawsuit, namely the refrigerator and dryer. There is ample case law in this jurisdiction that supports the proposition that evidence which has been lost, altered, or destroyed through the intentional or neglectful conduct of a litigant may be excluded from use at trial by that party. See Kippenhan v. Chaulk Services, Inc., 428 Mass. 124 at 126, 1992; Nally 405 Mass. at 197; Bolton v. Massachusetts Bay Trans. Auth., 32 Mass.App.Ct. 654, 656-57 (1992) (extending spoliation principles to parly that destroyed physical evidence after its expert inspected it). This court is unaware, however, of any Massachusetts case law dealing with the failure to preserve evidence which is not the subject of the lawsuit but which, if preserved, could have excluded the alleged offending instrumentality. It seems a logical extension of the Nally principles that spoliation remedies not be limited only to the destruction of the so called “offending instrumentality.” “Sanctions maybe appropriate for the spoliation of evidence that occurs even before an action has been commenced, if a litigant or its expert knows or reasonably knows that the evidence might be relevant to a possible action." Kippenhan v. Chaulk Sevices, Inc., 428 Mass. 124, 127 (1998) (emphasis supplied). In addition to the relevance issue, “(T)he threat of a lawsuit must be sufficiently apparent, however, that a reasonable person in the spoliator’s position would realize, at the time of spoliation, the possible importance of the evidence to the resolution of the potential dispute.” Id. at 127. The rule excluding evidence as a remedy for spoliation is based on both the unfair prejudice that would otherwise result and the fact of a negligent or intentional destruction. Id. (emphasis supplied). Applying both factors here, it appears that although the plaintiffs may have inadvertently failed to preserve the other potential causes of the fire, such a failure did not prejudice the defendant to the extent to warrant exclusion of the plaintiffs’ expert testimony.
The instant case is similar to the facts in a United States District Court case in New Hampshire. Mayes v. Black & Decker (U.S.), Inc., 931 F.Sup. 80, 84 (D.N.H. 1996). The Mayes case also involved a fire in a home, where the plaintiffs claimed the fire was caused by a defective coffee maker. The defendant manufacturer of the coffee maker moved to dismiss or to exclude the plaintiffs’ expert testimony as to the cause on the grounds that, although photographs and a video had been taken of the scene, the other appliances had been removed and the premises destroyed before the manufacturer had the opportunity to conduct its own investigation. The court wrote: “What perhaps most distinguishes the instant case from the wealth of reported decisions weighing the spoliation issue ... is the fact that, unlike here, the piece of evidence destroyed in the other cases is the putative defective product or item . . . Thus, defendant’s chief complaint is not that it is unable to inspect the plaintiffs’ principal piece of evidence, but rather that plaintiffs’ destruction of the scene and other appliances has deprived it of the opportunity to posit other ignition sources.” Id. at 84. Affidavits quoted by the court opined that the coffee maker was not the cause of the fire, but that there was insufficient evidence from which to determine the actual cause.
*414 This led the court to conclude that, while the defendant had been prejudiced to some degree by the destruction of the evidence, the prejudice did not rise to a level that would warrant dismissal of the case or exclusion of the plaintiffs’ expert testimony as to the cause. The preservation of the coffee maker and the defendant’s experts’ opportunity to inspect it allowed the defendant to present an able defense to the plaintiffs’ main theory. Id.; see also Howell v. Maytag, 168 F.R.D. 502, 507-08 (M.D.Pa. 1996) (rejecting request for dismissal or exclusion where accused microwave was preserved while rest of fire scene was destroyed). The same is true in the case at bar, and this court now reaches the same conclusion.
A careful reading of the selected deposition transcripts, interoffice memoranda of the various agents for the plaintiffs insurer, and other documentation provided by counsel does not lead this court to believe that either Mr. Mulcahy or Mr. Sheehan spoliated the dryer or refrigerator by failing to preserve them. The subject matter of the lawsuit, the fan, was preserved by Lt. Tellier (Tellier Deposition, p. 81). It is apparent that the primary responsibility for preserving evidence fell upon the municipal officials who chose to only preserve the fan, although there is no explanation of how the custody of the fan was transferred to Mulcahy. Lt. Tellier, when asked why the dryer or refrigerator were not preserved, answered that it would not have been economically feasible. (Tellier Deposition, p. 8 1.) It was also Mr. DuFresne’s opinion that the cause of the fire was the fan and that opinion was memorialized as early as July 12, 1994. Defendants are not requesting exclusion of testimony as to the other suspected causes of the fire, only the testimony of Mr. Mulcahy as to the fan. Certainly the decisions of the Haverhill officials and Mr. Mulcahy not to preserve the dryer and refrigerator may be fertile grounds for cross examination during trial, but this court does not believe that exclusion of Mr. Mulcahy’s testimony is an appropriate sanction under the circumstances.
While plaintiffs allege that the fan caused the fire, its mere existence cannot prove their case; they will still have to show that the fan caused the fire. The other suspected causes of the fire would have been factors for the defendants to evaluate, but they are not critical to their defense. The absence of these items does not prevent defendants from arguing that the fan was not defective.
ORDER
It is hereby ORDERED that the defendants’ motion for sanctions due to spoliation is DENIED and the plaintiffs’ cross motion for sanctions due to defendants’ spoliation is DENIED. No action is taken with respect to the defendants’ proposed jury instruction on spoliation; that instruction is deferred to the trial judge.

For the sake of clarity and for the purposes of this order, the court will refer to all plaintiff parties as “plaintiffs."

Plaintiff Dawson resided as a tenant in the property’s first floor apartment at the time of the fire.