Brady, J.
On June 25, 2000 plaintiff fell from a ladder while preparing defendants’ house in Cohassett for painting and was severely injured. He sues the defendants on the theory that they knew or should have known that the ladder, which they owned, was unsafe. Discovery having been completed, the parties cross-move for summary judgment. After hearing, and upon review of the entire summary judgment record and the cases cited by the parties, I will allow defendants’ motion and deny plaintiffs motion.
FACTS
The defendants are a married couple in their late sixties who reside at 26A Atlantic Avenue, Cohassett. The defendant Jacqueline Kleinz inherited the property from her father. Included in the property inherited was an aluminum extension ladder, variously described in the record as 24 feet and 30 feet, which was kept in the garage.[1] Mrs. Kleinz never used the ladder. Her husband, Thomas Van Aarle, an architect, may have used the ladder on occasion. Once before the accident a contractor used the ladder to clear leaves from the gutters.
In June 2000 Mr. Van Aarle hired Pierre Schiepers to paint the wooden exterior of the house and garage. Schiepers, whose primary occupation was not house painting, hired the plaintiff and one other to assist him in painting the house. The plaintiff was an experienced painter, and had received training in ladder safety. Among the three painters, plaintiff took responsibility for the higher areas to be painted.
The plaintiff fairly characterizes Schiepers’ crew as an “informal painting company.” Plaintiff arranged to have his own ladder brought to the site from his sister’s house. Plaintiffs ladder was heavier and stronger than the ladder in the garage owned by defendants, but it may have been shorter and it was less maneuverable. In any event, plaintiff chose to use defendants’ ladder. The plaintiff testified at deposition that he obtained permission from Mr. Schiepers to use the defendants’ ladder. Mr. Schiepers himself denied this. Plaintiff also says that Mr. Van Aarle knew that he was using defendants’ ladder because on the day before the accident, the two of them were working together in connection with certain windows and that Mr. Van Aarle asked him if it was defendants’ ladder that he was using. The plaintiff says that he responded in the affirmative, and that Mr. Van Aarle said nothing further about it. Mr. Van Aarle himself testified that he did not know that the plaintiff was using the defendants’ ladder; rather, he assumed the plaintiff was using his own equipment brought to the site as contractors are expected to do.
The accident occurred on Sunday, June 25, 2000, at or before noon. The plaintiff had extended the ladder to about three-fourths of its maximum length. Before ascending, the plaintiff made sure that the ladder was on a firm and level surface. As he ascended he checked that the ladder was secure. Nothing appeared defective or dangerous about the ladder to the plaintiff. The plaintiff admitted that nothing in the appearance of the ladder would have led anyone to believe that there was any reason not to use it.
While working near the peak of the house (or the garage), the plaintiff felt the ladder buckle or bend to the right. He then fell. The defendants were away from home when the accident occurred. When they returned, they found plaintiff on the ground and promptly secured medical assistance for him.
At about 6 p.m. on the evening of the accident, the plaintiffs father (James McCarthy) and his sisters came to the property to talk to Mr. Van Aarle and observe the ladder. Mr. Van Aarle was emotional, expressed how he liked the plaintiff, and was very sorry about the accident. The plaintiffs father, although he was an insurance agent for several decades and thus presumably more alert to our system of claims and compensation for accidents than the ordinary citizen, was not thinking about suing the defendants, and made no mention of a claim to Mr. Van Aarle. Likewise, Mr. Van Aarle, by his testimony, had no inkling that he might have some legal liability in connection with the event. The plaintiffs father wished to photograph the ladder, but he did not have his camera with him. He asked Mr. Van Aarle to “hang onto” the ladder. He then left the property, returning shortly thereafter with a camera and took several pictures of the bent and twisted ladder.
*201 Later that evening the defendants disposed of the ladder by taking it into Boston and placing it where it would be picked up during normal trash collection the next morning. In order to fit the ladder into their car, Mr. Van Aarle had to cut it into three sections. Mr. Van Aarle testified that he so promptly disposed of the ladder because he did not want anyone else using it. On the day after the accident, plaintiffs father communicated with a lawyer, and then called and pressed Van Aarle about the availability of the ladder. Van Aarle told him that it was disposed of, and that he would see what he could do to help them locate it. About a week later Mr. Van Aarle notified his insurance agent of the accident.
DISCUSSION
In order to prevail against the defendants the plaintiff would have to show that they knew or should have known that the ladder was defective and dangerous, and that they nonetheless permitted plaintiff to use the ladder without warning about its condition. Assuming, as I must, that Mr. Van Aarle actually knew that the plaintiff was using the ladder, there is no evidence whatsoever that he or his wife knew that there was anything wrong with the ladder. Mrs. Kleinz never used the ladder. Mr. Van Aarle may have used it a few times, and another contractor once used it to clear gutters. Plaintiff himself used the ladder without incident on the day before the accident. Plaintiff himself, with much greater experience in ladder use than the defendants, concedes that there was nothing about the ladder which would have led any person to believe that there was anything wrong with it.
The only angle for success for this lawsuit arises from the fact that defendants intentionally disposed of the ladder on Sunday evening. From this the plaintiff argues that they spoliated evidence, and that as a sanction, judgment as to liability for negligence ought to be entered against them.
In Massachusetts, the court has broad powers to sanction a party who negligently or intentionally destroys or alters evidence. Kippenhan v. Chaulk Servs., Inc., 428 Mass. 124, 127 (1998). There is, however, no independent cause of action for spoliation of evidence. Fletcher v. Dorchester Mutual Insurance Co., 437 Mass. 544 (2002). In one extraordinary case, Keene v. Brigham and Women’s Hospital, Inc., 439 Mass. 223, 237 (2003), the SJC let stand on spoliation principles a default sanction against the hospital for the loss of medical records vital to a medical malpractice case.
In order to trigger the doctrine of spoliation, and thus invoke possible sanctions against the party who lost or destroyed evidence, the offending party must have known, or should have known, that the item of evidence might be important in connection with a possible claim against him. Kippenhan, at 127. That condition cannot be satisfied here. Even plaintiffs father, who supposedly asked Mr. Van Aarle to hold onto the ladder, was not thinking claim at the time. He merely wanted to photograph the ladder and said nothing at all to defendants about a possible claim.
The plaintiff asks me to infer that in our litigious society, the mere fact of an accident on one’s property should be enough to alert a property owner that he might be the target of a lawsuit. Perhaps, standing alone, such an inference might be appropriate where the property owner is a judge or a personal injury lawyer, but this cannot be so in the case of the ordinary homeowner. There is little about the basic fact pattern of this case which should have trumpeted, or even whispered, lawsuit to these defendants. A hired painter fell off a ladder at the home while the homeowners were away; no one who saw the ladder before or after the accident can say anything about the condition of the ladder, pre-accident, which should have alerted the defendants to a defective condition in it. The defendants inherited the ladder; they used it rarely. Plaintiff never sought their permission to use it. Plaintiff asks this court to go considerably beyond what any other court has ever done in establishing liability against homeowners on a spoliation theory. Compare Gath v. M/A-Com, Inc., 440 Mass. 482 (2003) (spoliation sanction appropriate where, after lawsuit for defective or unsecured gate had been filed, defendants’ employees and trial attorney inspected gate, after which it was removed and negligently disposed of).
Furthermore, it is pure conjecture to say that a further inspection of the ladder would have assisted plaintiff in a claim against these defendants or any other possible defendants. No expert affidavit has been submitted which might indicate what help an inspection might have provided. Whether a manufacturer’s or seller’s name might have been on the ladder for a possible product liability action is nothing but guesswork. Even if a product maker or seller could have been identified, it is still a long road to travel to a successful product liability claim, particularly given the uncertain and likely unrecoverable history of the subject ladder from its time of manufacture and sale. See Coyne v. John S. Tilley Co., 368 Mass. 230, 237 (1975).
ORDER
The defendants’ motion for summary judgment is allowed. The plaintiffs motion for summary judgment is denied.

technically the ladder was owned by Mrs. Kleinz, but it makes no difference to the analysis.