Gath *v*. M/A-Com, Inc.

CORNELIUS GATH, SR., conservator,[1] *vs*. M/A-COM, INC.
JEFFREY GATH *vs*. M/A-COM, INC.

Middlesex. September 3, 2003. - December 8, 2003.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Civil,* Preservation of evidence, Loss of evidence, Instructions to jury, New trial, Conduct of counsel, Argument by counsel. *Negligence,* Gate, Spoliation of evidence, Proximate cause. *Evidence,* Relevancy and materiality. *Notice. Judgment,* Correction of judgment. *Consumer Protection Act,* Unfair or deceptive act.

At the trial of a civil action arising from catastrophic brain injuries suffered by a bicyclist (plaintiff) when a chain-link gate owned by the defendant suddenly swung open into the street, causing the plaintiff to fall and strike the pavement, the judge neither erred in finding that the defendant had negligently spoliated evidence by removing and destroying the gate, nor abused his discretion in imposing a sanction for spoliation that precluded the defendant from arguing or offering any evidence that the gate was secured during the day of the accident or that the gate had not been blowing out into the street to a distance equal to the length of the gate, where it was established that loss of the evidence prejudiced the plaintiff's ability to present his case fairly [487-489]; moreover, the judge did not abuse his discretion in permitting the plaintiff's counsel to introduce and argue evidence that the defendant had removed and destroyed the gate where, since the spoliation went to two central issues in the case and was arguably intentional, its probative value handily outweighed any claim of unfair prejudice [489-491]; further, the judge did not err in allowing the jury to decide the import of the defendant's spoliation, and correctly instructed them on the use of such evidence [491].

Although, at the trial of a negligence action arising from catastrophic brain injuries suffered by a bicyclist, the argument by plaintiff's counsel improperly vouching for the credibility of an expert witness and referencing airline crashes and baseball players' salaries was inappropriate, the judge's curative instructions to the jury eliminated the need for a new trial; however, given the improper, unprofessional argument by counsel, the judge would have acted properly within his discretion had he granted a new trial. [491-495]

In an action arising out of a bicycle accident that resulted in personal injury, the judge acted within his discretion in denying a motion by the defendant to correct or amend a judgment under Mass. R. Civ. P. 60, 365 Mass. 828 (1974), to reduce the judgment by $500,000 as a setoff representing a

[1]Of Jeffrey Gath.

pretrial settlement reached between the plaintiff and a third party, where there was support in the record for the denial of the motion, as the defendant failed to meet its burden of justifying why relief should have been granted. [495-497]

This court concluded that there is no cause of action for spoliation of evidence under G. L. c. 93A. [497-499]

CIVIL ACTION commenced in the Superior Court Department on December 22, 1998.

The case was tried before *Timothy S. Hillman*, J., and motions for a new trial and to amend the judgment were heard by him.

CIVIL ACTION commenced in the Superior Court Department on March 31, 2000.

A motion to dismiss was heard by *Hillman*, J.

The Supreme Judicial Court granted an application for direct appellate review.

*Richard John Shea* (*Michael R. Byrne* with him) for M/A-COM, Inc.

*Frederic N. Halstrom* (*Catherine M. Geary, William C. Geary, & Thomas J. Carey, Jr.*, with him) for Cornelius Gath, Sr., & another.

SPINA, J. On the windy afternoon of October 30, 1998, thirty-one year old Jeffrey Gath was riding his bicycle home from work along Chelmsford Street in Lowell when a large, chain-link gate owned by M/A-COM, Inc., unexpectedly swung open into the street. Although there was conflicting eyewitness testimony as to whether the gate actually struck Gath or his bicycle, there is no dispute that he fell and struck the pavement. As a result of the accident, Gath suffered catastrophic brain injuries that will require round-the-clock supervision and care for the rest of his life.

A Superior Court jury awarded Gath $14,250,000. M/A-COM appealed, alleging error in (1) the ruling that it had spoliated evidence, the admission of evidence of spoliation, and the judge's instruction to the jury on the use of such evidence; (2) the denial of its motion for a new trial, see Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974), based on the improper conduct and closing argument of Gath's counsel; and (3) the denial of its

motion under Mass. R. Civ. P. 60, 365 Mass. 828 (1974), to correct or amend the judgment by reducing the verdict by $500,000 to reflect a settlement between Gath and a codefendant, Burns International Security Services (Burns).[2] Gath appeals from a posttrial order dismissing his separate action under G. L. c. 93A for spoliation of evidence as failing to state a claim on which relief can be granted, Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974).[3] We granted M/A-COM's application for direct appellate review and consolidated the two appeals. We affirm the judgments.

1. *Facts.* On Friday, October 30, 1998, shortly before 3:30 P.M., Gath was riding his bicycle along Chelmsford Street near the sidewalk. It was a very windy day. Two eyewitnesses testified that a large chain-link gate suddenly swung open across the sidewalk and into the street, striking Gath. Gath "flew out into the street" and landed face down. He lay bleeding and unconscious on the ground. A third eyewitness testified she saw Gath fall, although she did not see the gate strike the bicycle.

Gath lay in a coma for about one week following the accident. He suffered severe traumatic brain injuries that resulted in paralysis and significant cognitive impairment. Gath testified that he had no memory of the accident. At the time of trial, he resided at Tewksbury State Hospital.

a. *Notice of hazardous condition.* The gate, located at a secondary entrance to M/A-COM's facility, was usually secured with a chain and padlocks, but was opened occasionally to allow access for construction vehicles and snow removal. Edward Devlin, an employee in M/A-COM's facilities department, testified that he had known for five or six years prior to the accident that the gate opened ninety degrees out into the street, a fact that he said was no secret at M/A-COM. He also testified it did

---

[2]On appeal, M/A-COM, Inc., does not challenge the denial of its motion for remittitur or, alternatively, a new trial on the issue of damages. These issues therefore are waived. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 921 (1975).

[3]In light of our decision in *Fletcher* v. *Dorchester Mut. Ins. Co.*, 437 Mass. 544 (2002), Gath has not appealed from the judge's dismissal of his claims of negligent and intentional spoliation of evidence as independent torts. We recognize the judge did not have the benefit of the *Fletcher* decision at the time of trial.

not take much effort to push the gate out into the street. Francis J. Morrison, an employee of Burns, which provided security services at the M/A-COM plant, testified he had seen the gate opened outward onto the sidewalk in 1997, the year before the accident. Morrison said he reported this to an employee of the facilities department at M/A-COM, although he could not remember to whom.

M/A-COM did not dispute that the gate had been opened by one of its employees on Wednesday, October 28, 1998, two days before the accident. It had been unlocked to allow employees access to the facility because a crane was blocking the main entrance. The gate remained unsecured until after the accident.[4]

John R. Bird, who operated an auto repair shop across from M/A-COM, testified he saw the gate swinging out into the street, back and forth, throughout the morning and into the afternoon of the accident. An employee of the same shop, Santiago H. Fernandez, also testified that the wind blew the gate open and shut all day long. Glen Cantone, a security guard for Burns, had seen the gate opened toward the inside of the M/A-COM property at 7 A.M. on the morning of the accident. Michael Fumicello, Jr., the director of security for M/A-COM, testified that he drove by the gate prior to the accident and noticed that it was open. He did not tell anyone to close it.

Counsel for M/A-COM acknowledged in his opening statement that the gate had been opened on October 28, 1998, and was being blown by the wind on the day of the accident. He also stated the gate extended three and one-half feet into the street.

b. *Spoliation.* M/A-COM facilities manager Dennis Harrington knew about Gath's accident within fifteen minutes of its occurrence. Harrington contacted Robert Amrein, the company's chief legal officer, later that same afternoon. Three days later, on Monday morning, Harrington met with Fred Gavlik, a supervisor in the facilities department, to discuss what had

---

[4]Asked by Gath's counsel why the gate was still unsecured on Friday, the day of the accident, M/A-COM's facilities manager Dennis Harrington testified, "[O]ut of sight, out of mind. It is not open for any good reason, at that point."

happened. M/A-COM facilities employee Jack Wilkey testified that approximately two weeks after the incident, on the instruction of Gavlik, he adjusted the gate's hinges to make them align properly, as the uphill side of the gate was "tipped in" toward the property.

Gath commenced this action on December 22, 1998. Just over one month later, on January 25, 1999, several M/A-COM employees, including Amrein and Harrington, met with M/A-COM's trial attorney[5] at the site to inspect and test the gate.[6] The participants, who were aware of Gath's lawsuit, swung the gate out into the street. It was then decided, without notifying Gath, to have the gate removed and replaced.[7]

At Harrington's direction, Gavlik signed a work order, dated January 25 (the same day M/A-COM managers had met with the company's lawyers), to have the gate removed and replaced "ASAP" by a fence contractor. The contractor included an extra charge to remove "debris," i.e., the old gate and hinges, a service that was specified in the contract. The contractor removed the gate and hinges within one week, and they were eventually scrapped and destroyed. Although an investigator hired by Gath had photographed and measured the gate four days after the accident, he was unable to open it or observe it in an open position. The fence contractor, however, testified that in the condition he saw it, the gate needed "not much" effort to swing out into the street, and if the hinges were out of adjustment, it would swing on its own.

On March 31, 2000, Gath commenced a second action alleging violation of G. L. c. 93A stemming from M/A-COM's spoliation of evidence.[8] That action was consolidated with the negligence action and dismissed after trial. Gath settled his claim against Burns for $500,000 in June, 2000. A cross claim asserted by M/A-COM against Burns for contribution and

[5]M/A-COM is represented by new counsel on appeal.

[6]The parties stipulated to this fact on the ninth day of trial.

[7]There was conflicting testimony as to whether Harrington alone or the group as a whole decided to replace the gate, and whether the contractor who removed the gate was instructed to save the parts.

[8]As noted previously, the second complaint also alleged counts of negligent and intentional spoliation of evidence, which the judge dismissed just prior to trial.

indemnity ended with a verdict for Burns. The jury awarded Gath $14.25 million on his negligence claim.

2. *Spoliation issues.* M/A-COM raises several issues with respect to spoliation of evidence. First, it argues that the trial judge erred in finding that M/A-COM had spoliated evidence, and abused his discretion in imposing a sanction for the spoliation, because Gath failed to establish that loss of the evidence prejudiced his ability to present his case fairly. Second, M/A-COM contends that the judge erred in admitting "voluminous" evidence of the spoliation at trial, where the evidence had little or no probative value and its prejudicial effect was substantial and incurable. Finally, the defendant claims the judge's instruction to the jury on the appropriate uses of spoliation evidence was too vague.

a. *The order.* At M/A-COM's request, the judge held an evidentiary hearing on the question of spoliation. He ruled that M/A-COM's removal and destruction of the gate was "at a minimum" negligent spoliation of evidence.

The judge found that Amrein knew the importance of the gate, and had discussed preserving it with M/A-COM's trial counsel. He further found that facilities personnel at M/A-COM "were aware of and a party to" that discussion, but that the gate was destroyed nevertheless. The judge determined that M/A-COM's spoliation deprived Gath of the opportunity to establish facts such as whether the gate was capable of swinging out onto Chelmsford Street, how far it swung out, and for how long the gate had been swinging freely. As a sanction, the judge precluded M/A-COM from arguing or offering any evidence that the gate was secured during the day of the accident, and from arguing or offering any evidence that the gate had not been blowing out into Chelmsford Street to a distance equal to the length of the gate.

M/A-COM argues that the loss of the gate did not prejudice Gath's claim, because whatever evidence an inspection of the gate would have provided was cumulative and unnecessary. At the time of the hearing, M/A-COM did not dispute that the gate had been opened two days before the accident by one of its employees and had remained unsecured; that the gate was unsecured at the time of the accident; or that a M/A-COM

employee had seen the gate open outward toward the street approximately six years earlier. Other evidence available to Gath included eyewitness accounts, photographs, and hospital records, and the report of an investigator hired by M/A-COM's insurer.

A judge has broad discretion to make evidentiary rulings, including the power to exclude evidence that would unfairly prejudice an opposing party. See *Nally* v. *Volkswagen of Am., Inc.,* 405 Mass. 191, 197 (1989). In a case involving spoliation, exclusion of evidence both sanctions the party responsible for destroying certain evidence and remedies the unfairness that such spoliation created. See *Kippenhan* v. *Chaulk Servs., Inc.,* 428 Mass. 124, 127 (1998). See also *Fletcher* v. *Dorchester Mut. Ins. Co.,* 437 Mass. 544, 550 (2002). But exclusion of evidence is not the sole remedy. Indeed, Massachusetts affords a greater range of remedies for spoliation than the majority of jurisdictions, which limit relief to permitting an adverse inference against the responsible party. *Id.,* citing *Kippenhan* v. *Chaulk Servs., Inc., supra* at 128. The spectrum of remedies includes allowing the party who has been aggrieved by the spoliation to present evidence about the preaccident condition of the lost evidence and the circumstances surrounding the spoliation, see *Kippenhan* v. *Chaulk Servs., Inc., supra* at 126-128, as well as instructing the jury on the inferences that may be drawn from spoliation. See *Fletcher* v. *Dorchester Mut. Ins. Co., supra* at 550. See also Nesson, Incentives to Spoliate Evidence in Civil Litigation: The Need for Vigorous Judicial Action, 13 Cardozo L. Rev. 793, 794, 806 (1991). These remedies may be cumulative, as determined by the judge from the circumstances of each case, in the exercise of broad discretion. See generally Nesson, *supra* (calling for more stringent sanctions for spoliation).

Among the elements of proof required to establish his claim for premises liability, Gath had to show that the hazardous condition of the gate had existed long enough so that in the exercise of reasonable care, M/A-COM should have discovered and removed it. See *Barry* v. *Beverly Enters.-Mass., Inc.,* 418 Mass. 590, 593 (1994); *Oliveri* v. *Massachusetts Bay Transp. Auth.,* 363 Mass. 165, 166 (1973). An expert in accident

reconstruction testified at the evidentiary hearing that an inspection of the weathering on the gate's hinges and pole "would certainly give you some indication" as to how long before the accident the gate was capable of swinging out into the street. Thus, evidence of M/A-COM's spoliation was relevant to notice, an essential element of Gath's case. Moreover, preservation of the gate in its original condition would have allowed the plaintiff to demonstrate how little effort was needed for the gate to swing open. In the meantime, M/A-COM could have padlocked the gate for safety purposes.

The expert also testified that an examination of the gate might have revealed physical evidence (such as rubber or paint from the bicycle) indicating whether the gate had actually struck Gath, which was a question of fact hotly contested at the trial. The evidence therefore also bore on proximate cause. Even though Gath had other evidence available, the actual gate and hinges in their postaccident condition may have been "far more instructive and persuasive to a jury" than photographs or testimony. *Nally* v. *Volkswagen of Am., Inc., supra* at 198. The judge did not abuse the broad discretion he had in remedying M/A-COM's spoliation of evidence.

b. *Revisiting spoliation ruling.* M/A-COM next contends that the judge erred in permitting Gath's counsel to introduce and argue evidence that M/A-COM had removed and destroyed the gate, effectively making the issue "the centerpiece of the trial." In M/A-COM's view, in light of the earlier sanctions imposed, no such evidence should have been permitted because it was irrelevant, or even if relevant, its substantial prejudicial effect outweighed its minimal probative value.

The judge's pretrial ruling on spoliation did not restrict the plaintiff from introducing evidence that M/A-COM had removed and destroyed the gate. The judge permitted Gath's counsel to refer to the loss in his opening statement, which he did, briefly. Over M/A-COM's repeated objections, Gath went on to examine several M/A-COM employees as to the removal or destruction of the gate and hinges. He also read from deposition transcripts of M/A-COM witnesses. He referred to M/A-COM's destruction of evidence in his closing argument as well.

To be relevant, evidence must have some tendency to prove

or disprove a particular fact, and that particular fact must be material to an issue in the case. See *Poirier* v. *Plymouth*, 374 Mass. 206, 210 (1978); P.J. Liacos, M.S. Brodin & M. Avery, Massachusetts Evidence § 4.1, at 108 (7th ed. 1999) (Liacos). See also Proposed Mass. R. Evid. 401. M/A-COM contends the spoliation order, because it prevented M/A-COM from disputing that the gate was unsecured and swinging into the street on the day of the accident, rendered irrelevant any evidence as to the physical condition of the gate or to its removal. We disagree.

"It has generally been held with regard to the second requirement [of relevance] that evidence may be admitted even if the issue is conceded or there is an offer to stipulate." Liacos, *supra*. See, e.g., *Commonwealth* v. *Nassar*, 351 Mass. 37, 46-47 (1966). As noted above, the spoliation evidence was relevant to the elements of notice and proximate cause in Gath's premises liability claim. M/A-COM's concession of certain facts regarding notice did not amount to a stipulation as to that issue, and furthermore it contested the question of proximate cause. M/A-COM did nothing that relieved Gath of his burden of proof, see *Commonwealth* v. *Rhoades*, 379 Mass. 810, 820 (1980), and its limited concessions did not prevent him from presenting relevant evidence on the elements of notice and proximate cause.

Nor do we agree with M/A-COM's assertion that the spoliation evidence was unfairly prejudicial. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. See *Green* v. *Richmond*, 369 Mass. 47, 59-60 (1975); Proposed Mass. R. Evid. 403. Nevertheless, even inflammatory evidence may be admissible. See *Commonwealth* v. *Bys*, 370 Mass. 350, 357-361 (1976) (graphic photographs of murder victim properly admitted). In balancing the two considerations, "the fact that evidence goes to a central issue in the case tips the balance in favor of admission." *Commonwealth* v. *Jaime*, 433 Mass. 575, 579 (2001). See Liacos, *supra* at 127, and cases cited. Moreover, the circumstances under which spoliation occurs is itself relevant, because it assists the jurors in deciding whether to draw a negative inference against the spoliator and the weight they will give such an inference. See *Testa* v. *Wal-Mart Stores, Inc.*, 144 F.3d 173, 177 (1st Cir. 1998), citing *Blinzler* v. *Marriott Int'l, Inc.*, 81 F.3d 1148, 1159 (1st Cir. 1996).

Here, where the spoliation went to two central issues in the case and was arguably intentional, its probative value handily outweighed the claim of unfair prejudice. The judge acknowledged the potential for prejudice, but contrary to M/A-COM's contention, he never found that the evidence was unfairly prejudicial. There was no error.

M/A-COM also claims the judge's posttrial rationale for admitting the evidence does not justify the decision to "reopen" the spoliation issue. The issue, however, was never closed, because the spoliation order itself did not address Gath's use of such evidence. See *Kippenhan* v. *Chaulk Servs., Inc., supra* at 125. In his order on M/A-COM's posttrial motions, the judge stated that certain evidence and testimony elicited from M/A-COM during the trial "negat[ed] the effect of the [judge's] sanction" and thus warranted admission of the spoliation evidence. In our view, the justification was unnecessary because it was within the judge's discretion to apply the sanction to M/A-COM and still allow Gath to introduce the evidence. See *Fletcher* v. *Dorchester Mut. Ins. Co., supra* at 550 ("The imposition of such a remedy must also take into account the party responsible for the spoliation"). See also *Kippenhan* v. *Chaulk Servs., Inc., supra* at 128. We discern no abuse of discretion in admitting the evidence.

c. *Jury instructions.* Finally, M/A-COM complains the judge improperly let the jurors decide the import of M/A-COM's spoliation, and incorrectly instructed them on the use of such evidence. We have already decided the judge did not err in allowing the jury to hear the spoliation evidence. As to the instructions, he cautioned the jury twice during the trial regarding proper use of the evidence, to which M/A-COM did not object. In his final instructions, the judge told the jury, conformably with *Kippenhan* v. *Chaulk Servs., Inc., supra* at 128, they could infer from the loss of the gate that it would have provided evidence unfavorable to M/A-COM. See *Fletcher* v. *Dorchester Mut. Ins. Co., supra* at 550 (noting that other jurisdictions "merely" permit adverse inference against spoliating party). There was no error.

3. *Motion for a new trial.* M/A-COM claims the judge erred

in refusing to grant a new trial.[9] As grounds for its rule 59 motion, M/A-COM claimed, inter alia, the erroneous admission of spoliation evidence, improper conduct by Gath's counsel, and erroneous jury instructions as to both spoliation and counsel's behavior. Having already disposed of the issues regarding spoliation, we will now address the conduct of counsel.

A new trial may be granted on the ground of prejudicial misconduct of counsel that is not cured by the judge's instructions to the jury. *Leone* v. *Doran*, 363 Mass. 1, 16-19, modified on other grounds, 363 Mass. 886 (1973). See J.W. Smith & H.B. Zobel, Rules Practice § 59.8, at 449 (1977 & 2003 Supp.). Trial counsel in a civil case must object to the improper conduct of opposing counsel, thereby alerting the judge to the impropriety, to preserve the issue for appeal. See *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 666 n.3 (1980). We grant considerable deference to a judge's disposition of a motion for a new trial, especially where he was the trial judge, and we will reverse the ruling only for an abuse of discretion. See *id.* at 664 & n.2. See also *Fialkow* v. *DeVoe Motors, Inc.*, 359 Mass. 569, 572 (1971).

M/A-COM complains of the behavior of Gath's counsel throughout the trial, most notably during an examination of one of his expert witnesses, and during his closing argument. We will confine our discussion to these two examples, which M/A-COM contends warrant the closest scrutiny.

a. *Examination of witness.* M/A-COM claims counsel for Gath improperly vouched for the credibility of his expert witness, Dr. Harold Goldstein, during the course of his direct examination, and then compounded the impropriety by gratuitously mentioning that counsel for M/A-COM used to work for him, thereby elevating his status in the jurors' minds. In response to an objection, the judge agreed the questioning was "totally improper" but declined to give a curative

[9]On appeal, M/A-COM does not pursue the denial of its motion for judgment notwithstanding the verdict or alternatively for a new trial, which claimed that Gath failed to prove the essential element of notice. Mass. R. Civ. P. 50 (b), as amended, 428 Mass. 1402 (1998). We note that the judge correctly found that there had been ample evidence that M/A-COM knew or should have known that the gate was swinging into the street on the day of the accident.

instruction. At the conclusion of Goldstein's testimony, a juror submitted a question concerning whether Goldstein had done work for M/A-COM's counsel, prompting M/A-COM to move for a mistrial. The judge denied the motion. Instead, he properly instructed the jury that the comment by Gath's counsel was "inappropriate" and must be disregarded. He further instructed that "what the lawyers say is not evidence." See *Luz* v. *Stop & Shop, Inc. of Peabody*, 348 Mass. 198, 207 (1964); *In-Towne Restaurant Corp.* v. *Aetna Cas. & Sur. Co.*, 9 Mass. App. Ct. 534, 544 (1980). The jury are presumed to follow such instructions. See *Luz* v. *Stop & Shop, Inc. of Peabody*, *supra* at 207-208. There was no error.

b. *Closing argument.* We agree with M/A-COM that counsel for Gath, Frederic Halstrom, crossed the line in his summation with references to airline crashes and baseball players' salaries. These examples bore striking resemblance to those which merited our rebuke of this very attorney fourteen years ago. See *Harlow* v. *Chin*, 405 Mass. 697, 703-706 (1989). We conclude, however, as we did earlier, that "the strong, corrective action taken by the judge in response to counsel's improper argument eliminates the need for a new trial." *Id.* at 703.

Responding to M/A-COM's closing argument that the gate had never caused injury to anyone else, Gath's counsel stated:

> "This corporation knew this gate would go out into the street. Mr. Devlin knew it. That's knowledge of the Corporation. . . . He deals with the gate in his facilities, much the same as an airplane mechanic. He knows there's something defective in the airplane. He doesn't tell anybody. That does not absolve the airline manufacturer if the plane goes down. And you only get one free shot in the airplane crash. That's their argument, that you need a body count. They need to hurt someone else, like this, before they have to do anything. That's not the law. You don't get a free shot. You don't have to have a body count. The airliner goes down. The manufacturers get off the hook, because it's only the first airline that went down. That's not the law. That would be absurd."

There was no objection. Later, still arguing M/A-COM's negligence, counsel stated, "Going back to the analogy of the

airplane. It's like the airplane mechanic forgot to pull something off the airplane when he finished his work. The plane goes down. The passenger is responsible? No. They are excused for liability because they forgot? No. They are not. They did this damage to this man. And that's why we are here."

Finally — after beginning his discussion of damages by noting that he was forbidden to argue specific dollar amounts — counsel encouraged the jurors to base their award on Gath's expected life span, which he proceeded to calculate. He concluded by saying, "I make no suggestions as to what dollar amounts these are. They pay baseball players, pitchers, I won't mention any amount, how many to pay [*sic*]? Every fifth day. That is the amount of money we deal with in today's society." M/A-COM objected immediately to the last comment, and the judge sustained the objection. Gath's counsel persisted but the judge cut him off abruptly, telling him to "wrap it up."

At the conclusion of the plaintiff's closing, counsel for M/A-COM argued that his opponent's "egregious" behavior "absolutely demands the sternest sanction that I could ask [you] to impose." He also made remarks that we construe as a motion for a mistrial. Instead the judge chose to give curative instructions. He instructed the jury during his final instructions that closing arguments are not evidence. See *Harlow* v. *Chin*, *supra* at 705. He also specifically instructed that counsel's reference to baseball salaries "was not appropriate for a closing argument and has no bearing on any issue in this case and should not be considered by you in any way for any purpose." Moreover, he instructed the jurors "comprehensively and correctly" on damages. *Harlow* v. *Chin*, *supra* at 706 & n.10. Counsel for M/A-COM did not object to the final instructions on damages or on any of the grounds now at issue.

In denying M/A-COM's motion for a new trial, the judge considered, as he must, the possible influence of counsel's conduct on the verdict. See *Torre* v. *Harris-Seybold Co.*, *supra* at 663-665. See also *London* v. *Bay State St. Ry.*, 231 Mass. 480, 485-486 (1919) (plaintiff's improper summation was "covert appeal to the jury to make this great and powerful corporation . . . feel the jury's power in the case at bar"); *Leone* v. *Doran*, 363 Mass. 1, 18-19 (1973) (evaluating trial

conduct of lawyer whose "overreaching and impermissible" tactics necessitated previous review by this court). The judge determined that although the behavior of Gath's counsel was at times "over the line," it did not affect the jury's award. In fact, he concluded that the verdict was achieved "despite [the] conduct of counsel, not because of it." The judge noted that it was obvious to him "that the jury did not like [A]ttorney Halstrom or his tactics."

The judge was in the best position to evaluate the effect on the jury of the improper argument. We defer to his view that the improper remarks made no difference. See *Harlow* v. *Chin, supra* at 703. Cf. *London* v. *Bay State St. Ry., supra; Torre* v. *Harris-Seybold Co. supra* at 662-666. We note that the verdict was not disproportionate to the catastrophic injuries suffered by Gath and was warranted by the record. See *Mirageas* v. *Massachusetts Bay Transp. Auth.,* 391 Mass. 815, 822 (1984). We add, however, that although the judge did not abuse his discretion in denying the motion for a new trial, he would have acted properly within his discretion had he granted a new trial.

We comment further on the closing argument of Halstrom, if only because he insists on appeal that his argument was not improper. In our view, it was most improper. The hypothetical references to airplane crashes and baseball players' salaries had no support in the record, and were obviously intended to suggest by such hyperbolic analogy what is expressly prohibited by specific request: an award of general damages in particular dollar amounts or categories. The argument here was no less inappropriate because Halstrom made no reference to a particular dollar amount. Cf. *Harlow* v. *Chin, supra* at 704. There can be no doubt about his intentions or what he was asking of the jury. Judges need not await an objection from opposing counsel before preventing the unfair advantage that such an argument seeks to obtain. The premise of such argument is antithetical to principles of fairness. It is improper, unprofessional, and should be cut short at the earliest opportunity.

4. *Rule 60 motion.* The Superior Court entered judgment on the jury's verdict of $14,250,000 on February 5, 2001. Nearly

one year later, on January 25, 2002,[10] M/A-COM moved to correct or amend the judgment under rule 60, to reduce the judgment by $500,000 as a setoff representing the pretrial settlement reached between Gath and Burns, pursuant to G. L. c. 231B, § 4.[11] See *Stuart* v. *Brookline,* 412 Mass. 251, 257-258 (1992); *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.,* 401 Mass. 155, 165 (1987); *Thayer* v. *Pittsburgh-Corning Corp.,* 45 Mass. App. Ct. 435, 440 (1998). The motion judge (who was also the trial judge) denied the motion without explanation.

M/A-COM argues that, because G. L. c. 231B, § 4, compels a setoff for settlement amounts, the reduction of the judgment is a "purely ministerial act," and that the failure to deduct the $500,000 was a clerical mistake to be corrected pursuant to rule 60 (a).[12] In the alternative, M/A-COM contends the judgment should have been reduced pursuant to rule 60 (b) because the failure resulted from "mistake, inadvertence . . . or excusable neglect." We reject M/A-COM's argument that the erroneous computation was a mere clerical error, see *Lopes* v. *Peabody,* 430 Mass. 305, 313-314 (1999); *Frank D. Wayne Assocs., Inc.* v. *Lussier,* 394 Mass. 619, 620 (1985), and treat the motion as requesting a substantive change that falls under the purview of rule 60 (b).[13]

Rule 60 (b) (1) allows a judge to grant relief from a judg-

[10]The motion was not docketed until February 13, 2002. Although it is customary to look to the docket to determine the date of filing such a motion, see, e.g., *Klimas* v. *Mitrano,* 17 Mass. App. Ct. 1004 (1984), the plaintiff does not argue that the motion was untimely filed. In any event, whether we view the motion as having been filed on January 25 or February 13 the result is the same.    ·

[11]General Laws c. 231B, § 4, provides, in pertinent part: "When a release or covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury . . . it shall reduce the claim against the others to the extent of any amount stipulated by the release or the covenant . . . ."

[12]The rule allows clerical mistakes in judgments to be corrected by the court "at any time" of its own initiative or on the motion of any party, although only with leave of the appellate court while an appeal is pending. See Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974).

[13]"The test is, first, whether the relief sought is 'clerical', rather than 'substantive'; and, second, whether the court intended to write the words or figures which it used." J.W. Smith & H.B. Zobel, Rules Practice § 60.2, at 190 (2003 Supp.). Here, the judge who originally issued the judgment reviewed the rule 60 motion in light of his original intent, see *Gagnon* v. *Fon-*

ment on the grounds of "mistake, inadvertence, surprise, or excusable neglect." See *Bushnell* v. *Bushnell*, 393 Mass. 462, 474 (1984). "Motions made under rule 60 (b) (1)-(5) must be made within a reasonable time, not to exceed one year." *Id.* at 474 n.25. See *Spadorcia* v. *South Shore Oral Surgery Assocs., Inc.*, 17 Mass. App. Ct. 362, 364 (1984). M/A-COM bears the considerable burden of showing that the mistake was indeed excusable, and not due simply to its own carelessness. See *Scannell* v. *Ed. Ferreirinha & Irmao, Lda.*, *supra* at 158; *Murphy* v. *Administrator of the Div. of Personnel Admin.*, 377 Mass. 217, 228 (1979). See also Reporters' Notes to Mass. R. Civ. P. 60, Mass. Ann. Laws, Rules of Civil Procedure at 588 (Lexis-Nexis 1997). We will not overturn the judge's decision absent a clear showing of abuse of discretion. See *Cullen Enters., Inc.* v. *Massachusetts Prop. Ins. Underwriting Ass'n*, 399 Mass. 886, 894 (1987); *Murphy* v. *Administrator of the Div. of Personnel Admin.*, *supra* at 227; *Tai* v. *Boston*, 45 Mass. App. Ct. 220, 224 (1998), and cases cited.

"The question of reasonable time, unlike the absolute one-year bar, is addressed solely to the judge's discretion." *Chavoor* v. *Lewis*, 383 Mass. 801, 805 n.4 (1981). See *Parrell* v. *Keenan*, 389 Mass. 809, 815 (1983); *Rezendes* v. *Rezendes*, 46 Mass. App. Ct. 438, 440 (1999). We are unable to determine whether the judge found the delay to be unreasonable, and if so, the basis for such a finding. However, there is support in the record for his denial of the motion, as M/A-COM offered no reason or excuse for the delay other than to state conclusively that "it is the result of 'mistake, inadvertence . . . or excusable neglect.' " It also cited no facts to support its argument. M/A-COM thus fails to meet its burden of justifying why relief should be granted.[14]

5. *Claim for spoliation under G. L. c. 93A.* Finally, Gath ap-

---

*taine*, 36 Mass. App. Ct. 393, 400 n.7 (1994); thus, we infer from his denial of the motion that he had intended to write the figure used. That being so, rule 60 (a) does not apply, so we proceed under rule 60 (b) (1). See J.W. Smith & H.B. Zobel, *supra*.

[14]In light of our conclusion, we need not address Gath's argument that, because the jury found Burns not negligent, the credit for settlement with one who is "liable in tort for the same injury" mandated by G. L. c. 231B, § 4, does not apply to the judgment in this case.

peals from the dismissal of his complaint alleging that M/A-COM's spoliation of evidence constituted an unfair or deceptive act under G. L. c. 93A. The judge dismissed the claim on M/A-COM's motion under rule 12 (b) (6) after concluding that G. L. c. 93A "applies only if the parties themselves had a commercial relationship." See *Arthur D. Little, Inc.* v. *East Cambridge Sav. Bank*, 35 Mass. App. Ct. 734, 743 (1994).

In *Fletcher* v. *Dorchester Mut. Ins. Co.*, 437 Mass. 544 (2002), we declined to recognize an action in tort for spoliation of evidence. Today we expressly hold what we implied in the *Fletcher* case: there is also no cause of action for spoliation of evidence under G. L. c. 93A.

We recognize that the remedy provided by G. L. c. 93A is "sui generis . . . neither wholly tortious nor wholly contractual in nature," *Slaney* v. *Westwood Auto, Inc.*, 366 Mass. 688, 704 (1975), and "not dependent on traditional tort or contract law concepts for its definition." *Heller* v. *Silverbranch Constr. Corp.*, 376 Mass. 621, 626 (1978). See *Kattar* v. *Demoulas*, 433 Mass. 1, 12-13 (2000). Therefore, Gath argues, the *Fletcher* case does not preclude us from applying G. L. c. 93A to his claim. We are not convinced, however, that the reasoning we relied on in that case should not apply here as well. There is thus no need to address the question whether M/A-COM acted in a business context when it spoliated evidence. See *First Enters., Ltd.* v. *Cooper*, 425 Mass. 344, 347-348 (1997).

The plaintiffs in *Fletcher* v. *Dorchester Mut. Ins. Co.*, *supra* at 545, were the parents of children who were injured or killed in a tragic house fire. In the underlying claim for negligence against the owner of the house, the plaintiffs moved for sanctions for alleged spoliation of evidence by an expert retained by Dorchester Mutual, their homeowner's insurer. *Id.* They also filed a separate action against Dorchester Mutual and the expert claiming, inter alia, negligent and intentional spoliation of evidence and, as against Dorchester Mutual, a violation of G. L. c. 93A and G. L. c. 176D (unfair claim settlement practices), "stemming from the same 'spoliation of evidence.' " *Id.* at 546.

Noting the decisions of other jurisdictions, we adhered to the majority view that does not recognize a cause of action for spoliation. *Id.* at 547. In so doing, we recognized that Mas-

sachusetts courts already have remedies for spoliation of evidence, i.e., exclusion of testimony in the underlying action, dismissal, or judgment by default. See *id.* at 550-551. Indeed, as previously noted, the relief that we permit exceeds that of other jurisdictions, which merely allow an adverse inference to be drawn against the responsible party. See *id.* at 550, 553. Moreover, "allowing a separate cause of action for spoliation would recognize a claim that, by definition, could not be proved without resort to multiple levels of speculation." *Id.* at 551.

In sum, our view is that "appropriately tailored sanctions imposed in the underlying action are a more efficacious remedy for spoliation than allowing a separate, inherently speculative cause of action for such litigation misconduct." *Id.* at 553. Accordingly, we ordered dismissal of the plaintiffs' claims for spoliation in *Fletcher* v. *Dorchester Mut. Ins. Co., supra.* For the same reasons, we are persuaded that spoliation of evidence should not provide grounds for relief under G. L. c. 93A. The judge correctly dismissed Gath's claim.

6. *Conclusion.* The judgment on the jury's verdict is affirmed. The order denying M/A-COM's motion for a new trial is affirmed. The order denying M/A-COM's motion to amend the judgment under rule 60 is affirmed. The judgment dismissing Gath's claim under G. L. c. 93A is affirmed.

*So ordered.*