Troy, J.
The plaintiffs, Ronald Stull, Regina Stull, Robert Stull, and Alicia Stull, brought this action against the defendants, Corrigan Racquetball Club, Inc. and Manee Ekas, after the plaintiff, Ronald Stull, suffered an injury while exercising at Corrigan Racquetball Club, Inc. The complaint includes claims for negligence and loss of consortium. This matter is before the court on the Plaintiffs Request For Sanctions Against Defendants Corrigan Racquetball Club, Inc. And Manee Ekas For The Intentional Spoliation of Relevant Evidence. For the reasons discussed below, the request is allowed in part and denied in part.
BACKGROUND
During the early morning of September 7,2000, the plaintiff, Ronald Stull (Stull), was using the fitness equipment at Corrigan Racquetball Club, Inc. (the Club). Stull alleges that while using the latisimus dorsi pull-down machine (the lat machine), the bar that he was holding onto and pulling down became detached from the spring-clip, causing Stull to rapidly pull the bar down onto his head. Although Stull has little memory of the accident, he testified during his deposition that he knew he was using the lat machine when the accident happened.
Shaun Quilty (Quilty), a Club member, saw Stull soon after the accident. Quilty saw Stull sitting on some stairs holding his head with a bag of ice. Quilty testified during his deposition that Stull told him that he (Stull) was rendered unconscious because the bar on the lat machine “came free and hit him in the head.” Graham Branlund (Branlund), a Club employee, testified during his deposition that on the morning of the accident Stull told him that he (Stull) had “smashed a bar over his head.” Branlund later observed the equipment room and saw the bar on the floor and the spring-clip hanging from the cable. Joseph Driscoll (Driscoll), the manager of the Club, also observed on the day of the accident the bar on the floor.
Quilty testified that on the day of the accident he examined the spring-clip. Quilty testified that “(w]hen you opened [the spring-clip], I don’t recall it coming back. It was loose. It didn’t seem like it had any spring to it. . .” Quilty explained that the spring-clip did not have any “return spring” and that when he pushed in the spring clip, “it didn’t snap back close to all the way.” Bourbeau testified that Branlund told him that the lat machine bar was on the floor after the accident and that the spring-clip had been twisted open. Branlund testified during his deposition that on the day of the accident he noticed after Stull’s accident that the spring-clip was not broken.
Quilty also testified that, several days after the accident, Branlund told him that the spring-clip had been replaced by Driscoll. Michael Bourbeau, who previously represented Stull in this matter, testified during his deposition that Branlund told him (Bourbeau) that a maintenance person named Carlos replaced the spring-clip on the lat machine and that “another ring was placed on the machine and the machine was put back in operation.” In a report prepared by an agent for the defendants’ insurance company, the agent states that during his investigation he spoke with Driscoll, who “stated that the clip had been disposed of as a precaution.” Also, the defendants submitted with their motion exhibit L, a “memo to file” that the defendants claim was prepared in anticipation of litigation. This memo is dated September 22 and indicates that the spring clip was removed and thrown away.
Manee Ekas (Ekas), owner of the Club, testified at his deposition that he personally removed a spring-clip from the lat machine on December 13, 2001. Ekas does not know whether the spring-clip he removed was the same spring-clip attached to the lat machine on the day of Stull’s accident.
On the day of Stull’s accident, Driscoll wrote an incident report in which he states that Branlund observed a small contusion on Stull’s head but minimal bleeding. Ekas had told Driscoll to write an incident report regarding what he knew about Stull’s accident. According to the report, Branlund on several occasions asked Stull if he wanted medical attention, *389 which Stull refused. When Stull told Branlund that he was going to continue to exercise, Branlund told Stull that any further exercise would be inadvisable. Driscoll observed the contusion on Stull’s head and asked Stull if he wanted someone to take him to the hospital, which Stull refused. Driscoll testified that Stull told him soon after the accident that he was okay. Quiliy testified that Stull had a one-inch cut on the top of his head and that there was minimal bleeding. During his first conversation with Quiliy after the accident, Stull told Quilty that he felt dizzy. Quiliy testified that after the accident Stull maintained his usual demeanor.
Stull’s first attorney in this matter testified during his deposition regarding the possible cause of Stull’s accident and said, “I didn’t think it was the wire itself, and I know from talking to [Stull] it wasn’t the snap link.”
DISCUSSION
The plaintiffs argue that the defendants intentionally removed or destroyed the spring-clip from the lat machine and that, under the doctrine of spoliation, sanctions be imposed. The plaintiff requests that the court enter a default judgment against the defendants or, in the alternative, exclude the defendants from introducing evidence of the pre-and post-accident condition of the spring-clip, instruct the jury to draw an adverse inference against the defendants that the spring-clip, because the defendants lost or destroyed it, was faulty or damaged, and prevent the defendants and their experts from testifying as to any cause for the accident other than because of a broken or defective spring-clip.
The doctrine of spoliation “permits the imposition of sanctions and remedies for the destruction of evidence in civil litigation.” Keene v. Brigham & Women's Hospital, Inc., 439 Mass. 223, 235 (2003). “The doctrine is based on the premise that a parly who has negligently or intentionally lost or destroyed evidence known to be relevant for an upcoming legal proceeding should be held accountable for any unfair prejudice that results.” Id. Sanctions may be imposed even if the spoliation of evidence occurred before the legal action was commenced, if a litigant knows or reasonably should know that the evidence might be relevant to a possible action. Kippenhan v. Chaulk Servs., Inc., 428 Mass. 124, 127 (1998). “The threat of a lawsuit must be sufficiently apparent . . . that a reasonable person in the spoliator’s position would realize, at the time of spoliation, the possible importance of the evidence to the resolution of the potential dispute.” Id.
While the trial judge has broad discretion in determining the appropriate sanctions, Gath v. M/A-Com, Inc., 440 Mass. 482, 488 (2003), the “least severe sanction necessary to remedy the prejudice to the nonspoliating parly” should be imposed. Keene, 439 Mass, at 235, citing Fletcher v. Dorchester Mut Ins. Co., 437 Mass. 544, 550 (2002). Sanctions include excluding testimony by the spoliating parly or allowing testimony by the nonspoliating parly regarding the pre-accident condition of the spoliated evidence. Gath, 440 Mass, at 487-88. The court may also allow into evidence the circumstances under which the spoliation occurred, “because it assists the jurors in deciding whether to draw a negative inference against the spoliator and the weight they will give such an inference.” Id. at 490. The court may therefore instruct the jury on inferences that may be drawn against the party responsible for the spoliation. Id. Massachusetts courts generally require that “the extreme sanction of dismissal or default judgment be predicated on a finding of wilfulness or bad faith, . . . because the law strongly favors a trial on the merits of a claim.” Keene, 439 Mass, at 235-36 (internal citations and quotations omitted).
The first issue to be addressed is whether the defendants spoliated evidence, specifically, the spring-clip. Although the record is somewhat unclear on the issue, deposition testimony and other exhibits offer some insight. The “memo to file” submitted by the defendants as Exhibit L indicates that the spring-clip was removed and thrown away. Bourbeau testified that Branlund told him (Bourbeau) that a maintenance person named Carlos replaced the spring-clip on the lat machine and that “another ring was placed on the machine and the machine was put back in operation.” Quilty testified that Branlund told him that the spring-clip had been replaced by Driscoll. The defendants’ insurance agent stated in his report that during his investigation he spoke with Driscoll, who “stated that the clip had been disposed of as a precaution.” It is unclear precisely who disposed of the spring-clip, but the evidence indicates that Driscoll knew of and likely authorized the removal of the spring-clip. Regardless, some employee of the defendant Club removed and disposed of the spring-clip, thereby spoliating evidence relevant to this litigation.
The record suggests that the spring-clip was removed and disposed of within days of Stull’s accident, prior to the commencement of this action. That the spring-clip was spoliated prior to Stull’s lawsuit is immaterial, however, provided that the person who removed and disposed of the spring-clip knew or should have known that the spring-clip would be relevant to a possible action. See Kippenhan v. Chaulk Servs., Inc., 428 Mass. 124, 127 (1998). The court is persuaded that “a reasonable person in the spoliator’s position would realize, at the time of spoliation, the possible importance of the evidence to the resolution of the potential dispute.” Id. The person who removed and disposed of the spring-clip knew that Stull had been injured while using the lat machine and that the injury may have been caused by a defective or faulty spring-clip; otherwise, there would have been no reason to remove the spring-clip. Although Stull may not have been severely injured immediately following *390 the accident (Branlund, Quilty, and Driscoll all observed only a small contusion on Stull’s head and minimal bleeding), it was not without possibility that Stull would seek compensation for his medical expenses or attendant pain. Even if the spoliator may have removed and disposed of the spring-clip only as a “precaution” to prevent future injury, the spoliator, Driscoll, and Ekas should have known to keep the spring-clip in the event Stull sought reimbursement for medical expenses or other damages.
The court, however, is unpersuaded that the spoliator removed and disposed of the spring-clip in bad faith. Although Stull had been injured, he had not yet commenced litigation at the time of the spoliation. Moreover, although the spoliator should have known that a lawsuit was a possibility, a costly lawsuit did not appear imminent given that Stull’s injury immediately following the accident consisted of a small contusion on his head and Stull had refused medical treatment. Absent a finding of wilfulness or bad faith, the court will not enter a default judgment in Stull’s favor, as “the law strongly favors a trial on the merits of a claim.” Keene, 439 Mass, at 235-36.
It is clear that the spoliation of the spring-clip has prejudiced the plaintiff. The spring-clip would have possibly provided the plaintiff with physical evidence of the cause of the accident. Because of the defendants’ negligence in disposing the spring-clip, the plaintiff has been denied this opportunity. However, the plaintiff may still present witnesses, specifically, Quilty, who can testify as to the post-accident condition of the spring-clip.
The court finds that the appropriate sanction in this case is to allow the parties to testify as to the pre-and post-accident condition of the spring-clip. The plaintiff, however, will be permitted to introduce evidence of the defendants’ removal and disposal of the spring-clip. Such evidence will “assist! ] the jurors in deciding whether to draw a negative inference against the spoliator and the weight they will give such an inference.” Gath, 440 Mass, at 490. The court should therefore instruct the jury on inferences that may be drawn against the defendants. The court denies the plaintiffs’ request to prevent the defendants’ from introducing evidence of a cause for the accident other than the spring-clip. The jury should not be denied the opportunity to hear evidence of other possible causes for the accident, whether it be the plaintiff introducing credible evidence of a different part of the lat machine being defective, or the defendant cross-examining the plaintiff as to the plaintiffs own possible negligence in operating the lat machine.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Plaintiffs’ Request For Sanctions Against Defendants Corrigan Racquetball Club, Inc. And Manee Ekas For The Intentional Spoliation of Relevant Evidence be allowed in part and denied in part. The court denies the plaintiffs’ requests 1) for a default judgment, 2) to prevent the defendants and their experts from testifying as to any cause for the accident other than because of abroken or defective spring-clip, and 3) to exclude the defendants from introducing evidence of the pre-and post-accident condition of the spring-clip. The court allows the plaintiffs’ request for sanctions in that it will allow the plaintiff to introduce evidence of the spoliation and will instruct the juiy on the inferences they may draw from the spoliation.