NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1353

COBBLE HILL CENTER LLC

vs.

SOMERVILLE REDEVELOPMENT AUTHORITY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from a judgment awarding the plaintiff roughly $27.92 million[1] after the defendant took by eminent domain a four acre parcel of land owned by the plaintiff.[2]  On appeal, the defendant argues that it was deprived of a fair trial due to plaintiff's counsel's improper closing argument.  The defendant also appeals from the denial of its motion for a new trial, in which the defendant also argued that plaintiff's counsel's remarks during closing argument were

---

[1] The jury awarded the plaintiff $35,306,000; this amount was reduced by the pro tanto award ($8,778,000), leaving a net award of $26,528,000 plus prejudgment interest ($1,391,554.14).

[2] The taking's validity was affirmed in Cobble Hill Ctr. LLC v. Somerville Redev. Auth., 487 Mass. 249 (2021).

prejudicial.  We affirm the judgment and the order denying the new trial motion.

Background.  On September 11, 2019, the plaintiff, Cobble Hill Center LLC (Cobble Hill), filed a complaint seeking compensation for the taking by the defendant, Somerville Redevelopment Authority (Somerville), of its four-acre parcel of land located in Somerville, Massachusetts (the property).  A jury trial was held in May 2023.  The sole issue at trial was the fair market value of the property.  During his closing argument, counsel for Cobble Hill made the following statements:

> "Now, a review of the evidence proves that the government hasn't been close to being fair to my clients";

> "The great thing about our jury system is, you know, anyone can be held accountable.  Even the government can be held accountable in our system";

> "That's not how your government should be acting, ladies and gentlemen, and don't leave your common sense at home.  How does the government treat you?  What's your common experience about how the government treats its citizens?  Are they fair?  Are they unfair?  I suggest to you in this case, ladies and gentlemen, that they could not have been more unfair"; and

> "And it's really, as I say, it's one of the great things about the jury system. . . .  And even as . . . the Judge said, better to have you people decide it than us.  And even the government can be held accountable."

Somerville did not object to the comments quoted above at that time.  At the conclusion of Cobble Hill's counsel's closing argument, the judge immediately instructed the jury that this case is about fair market value and not about how the government

2

treats "you all as a jury or anybody else."  Thereafter, the judge asked both counsel whether they had "[a]nything [to say] for the record."  Somerville objected to Cobble Hill's counsel's statements regarding government fairness and requested a curative instruction.[3]  The judge said he would reiterate his comments in his final instructions.  Subsequently, the judge told the jury to not let personal feelings, emotions, or prejudice influence their decision.  Somerville did not object at the conclusion of the judge's final instructions or suggest any alternative language.  Nor did Somerville request a mistrial.

As noted, the jury returned a verdict in Cobble Hill's favor in the amount of $35,306,000.  Somerville timely filed a motion for a new trial.  The motion judge, who was also the trial judge, denied the motion.

Discussion.  "We review the denial of the defendants' motion for a new trial for abuse of discretion."  Parsons v. Ameri, 97 Mass. App. Ct. 96, 103 (2020).  See O'Brien v. Pearson, 449 Mass. 377, 384 (2007).  "[C]onsiderable deference" is given to a motion judge's decision, "especially where he was the trial judge."  Gath v. M/A-COM, Inc., 440 Mass. 482, 492

_____

[3] It is questionable whether Somerville objected to each of the closing argument statements.  Regardless, we presume that counsel objected to each.

3

(2003).  See Fialkow v. DeVoe Motors, Inc., 359 Mass. 569, 576-577 (1971) ("Abuse of discretion in granting or refusing a new trial can so seldom be found that actual instances in which this court has set aside the action . . . are exceedingly rare" [quotation omitted]).

On appeal, Somerville contends that portions of Cobble Hill's counsel's closing argument "intentionally and improperly preyed on jurors' anti-government bias" and deprived Somerville of a right to a fair trial.[4]  We agree that several of Cobble Hill's statements during closing argument were improper.  It is improper "to ask the jurors to put themselves in the position of any person involved in the case."  Mass. G. Evid. § 1113(b)(3)(D) (2024).  Counsel for Cobble Hill did exactly that -- he asked the jurors to think about how the government has treated them.

When faced with a motion for new trial premised on an improper closing argument, we consider:

> "(1) whether the defendant seasonably objected; (2) whether the error was limited to collateral issues or went to the heart of the case; (3) what specific or general instructions the judge gave to the jury which may have mitigated the mistake; and (4) whether the error, in the circumstances, possibly made a difference in the jury's conclusion [quotation omitted]."

---

[4] Somerville alternatively asserts that the judge abused his discretion in denying its motion for a new trial.  Since both of Somerville's arguments require our review of the improper closing statements, we need not address them separately.

4

Fyffe v. Massachusetts Bay Transp. Auth., 86 Mass. App. Ct. 457, 472 (2014).

1. Defendant's objection. In a civil case, trial counsel "must object to the improper conduct of opposing counsel, thereby alerting the judge to the impropriety, to preserve the issue for appeal." Gath, 440 Mass. at 492. Counsel shall object "before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974).

Interrupting opposing counsel's closing argument and objecting to a particularly egregious statement is appropriate. In this case, Somerville did not object during Cobble Hill's closing. In our view, the fact that experienced counsel did not immediately object is some indication that the tone, manner, and substance of the challenged remarks were not unfairly prejudicial. In fact, no objection was made until after the judge gave a curative instruction. At that point, Somerville's counsel stated that Cobble Hill's counsel was

> "not entitled to . . . play upon the emotions of the jury and saying that they should take into consideration . . . that their experience and whether the government has been fair with them. That is beyond outrageous that they are supposed to use their own experience in how the government has treated them . . . . I think it's objectionable. . . . I object. And I request the Court give a corrective instruction that any notion of whether the government is fair to [the jurors] plays no part in this case."

5

Additionally, following the judge's final instructions, Somerville did not object, give the judge additional guidance, or otherwise indicate that it was not satisfied with the instructions. On the contrary, during a posttrial hearing Somerville conceded that the instructions were sufficient, with its counsel stating that, "I'm not suggesting that your curative instruction was . . . insufficient." Therefore, we presume that Somerville was satisfied with the instructions.

Moreover, Somerville did not request a mistrial. We view the failure to do so as further support for our conclusion that Sommerville was satisfied with the judge's curative instructions. A request for a mistrial is "an immediate, on-the-spot response to a specific issue so serious that it warrants breaking off a trial that has begun, and may be close to concluding." Fitzpatrick v. Wendy's Old Fashioned Hamburgers of N.Y., Inc., 487 Mass. 507, 513 (2021). "[A] mistrial is generally regarded as the most drastic remedy and should be reserved for the most grievous error where prejudice cannot otherwise be removed" (quotation omitted). Id. Although Somerville now asserts that Cobble Hill's closing was "prejudicial," "inflamed the known biases of the jury," and "created prejudicial error requiring a new trial," during the trial Somerville's counsel stated, "I don't think there's a mistrial here."

2.  Collateral issue.  We next address whether the remarks at issue were limited to collateral issues or went to the heart of the case.  "An issue is collateral to the underlying dispute if it is one that will not have to be considered at trial." Maddocks v. Ricker, 403 Mass. 592, 596 (1988).  For example, in Fyffe, 86 Mass. App. Ct. at 472, the "central issue" was the "fair compensation for the injury suffered by the plaintiff." During the plaintiff's closing, counsel remarked that the plaintiff could, at any point, suddenly become a quadriplegic due to her injuries.  Id.  This statement "invited the jury to speculate about the central issue in the case."  Id.  As a result, we concluded in that case that the "judge's final charge was [not] sufficient to counter the damage."  Id. at 473.

Here, the central issue before the jury was the fair market value of the property.  Cobble Hill's counsel's comments could be interpreted as arguing that Somerville was unfair in its appraisal of fair market value.  Nonetheless, the judge's curative measures negated any potential prejudice to Somerville. We see no error.

3.  Judge's instructions.  We next turn to the judge's instructions and evaluate them as a whole.  We presume that jurors follow the judge's instructions.  Stricker v. Scott, 283 Mass. 12, 14 (1933).  Those instructions shall be "sufficiently strong to accomplish . . . [the] purpose of counteracting the

7

adverse effect of the withdrawn matter" (quotation omitted). Commonwealth v. Crehan, 345 Mass. 609, 613 (1963).

In Harlow v. Chin, 405 Mass. 697 (1989), during the closing argument in a medical malpractice trial, the plaintiff repeatedly referenced verdicts and specific numerical amounts from other cases. Id. at 704. The defendant objected. Id. at 703. The judge went on to instruct the jury that the plaintiff's argument was "not evidence" and then correctly explained the concept of damages. Id. at 705-706. The defendant did not object to those instructions. Id. at 706. Despite plaintiff's "egregious" and "improper" closing argument, "the strong, corrective action taken by the judge to counsel's improper argument eliminate[d] the need for a new trial." Id. at 703. "The precise wording of [the curative instruction] is of course to be left to the discretion of the trial judge." Salter v. Leventhal, 337 Mass. 679, 698 (1958).

Contrary to Sommerville's assertion, the result reached by the Supreme Judicial Court in London v. Bay State St. Ry., 231 Mass. 480 (1919), does not control here because the instructions given by the judge here, unlike those given in London, were sufficiently forceful to cure any prejudice. In London, during the plaintiff's closing argument, counsel appealed to the jury by requesting that they consider themselves as passengers aboard the defendant railway company. Id. at 484. Counsel referenced

8

the jury's ability to "mak[e] law" and the railway company's eminent domain power. Id. Neither of those topics were at issue in the trial for damages and the defendant objected on that ground. Id. at 484-485. In an attempt to cure the plaintiff's improper comments, the judge instructed the jury that neither of the plaintiff's statements had "any bearing on any issue that [they] are trying." Id. at 486. The plaintiff's "covert appeal to the jury" required "rigorous and emphatic action" by the judge. Id. at 485, 486. The judge had a duty to "make certain that the jury would disregard this appeal to them." Id. at 486. However, the judge's instructions did not explain that the jury should disregard the specific parts of the plaintiff's closing. Id. As such, unlike here, the instruction "fell short" of the "rigorous and emphatic action" required. Id.

For similar reasons, we held that the jury instructions fell short in Fyffe, 86 Mass. App. Ct. at 475. There, the plaintiff's counsel made "unfounded" arguments during the closing argument that blamed the Massachusetts Bay Transportation Authority (MBTA) for its "indifference to rider safety" and instructed the jury members that "[i]t [was their] job as the conscience of the community" to be "the guardians of the safety" of all persons that ride the trains. Id. at 467. The MBTA repeatedly objected throughout the closing. Id. at

9

468. The judge interjected, reminding the jury that the sole issue before it was damages. Id. The judge did not instruct the jury to disregard the arguments focused on the MBTA's responsibility or the jury's role as "guardians." Id. at 469. Thus, we determined that the judge's curative instructions "fell short" of adequately addressing the multiple improper arguments made. Id. at 475.

Here, unlike in London and Fyffe, the judge's instructions adequately mitigated the effect of the challenged remarks. The judge was specific when he informed the jury that the arguments regarding the government and fairness should not bear on their decision. The judge stated,

> "this case is not about how the government treats you all as a jury or anybody else. It's about fair market value. So sometimes when we talk about things with passion, I don't want to distract you. This is not about the government in general. This is just about a taking and fair market value."

Moreover, Somerville did not object to this curative instruction. Accordingly, the judge's instructions adequately mitigated Cobble Hill's improper statements in its closing argument. See Commonwealth v. Vidito, 21 Mass. App. Ct. 332, 335 (1985); Commonwealth v. Pope, 15 Mass. App. Ct. 505, 511-512 (1983).

4. Jury's conclusion. Finally, in determining whether the improper arguments made a difference in the jury's verdict, we

10

note that the judge "was in the best position to evaluate the effect on the jury of the improper argument." Gath, 440 Mass. at 495. We review the amount the jury awarded alongside the evidence presented.

Somerville argues that Cobble Hill's closing improperly influenced the jury's assessment of damages. Somerville asserts that the "highest appraisal value proffered" by Cobble Hill was a fair market value of $35.2 million, yet the verdict was $106,000 more than that valuation.[5]

However, the award was well supported by the evidence, a fact that Somerville acknowledged. The verdict was the result of multiplying the square foot value of the highest value comparable sale[6] by the highest number of square feet that Cobble Hill's parcel could be used for. Indeed, Cobble Hill's expert opined that $35.2 million was the fair market value of the property. Notably, the $35.2 million value was the result of

[5] Somerville also contends that the jury should have "discounted" the fair market value of the property because the property at 28 Fitchburg Street was not an equally comparable property. This was a matter solely within the jury's discretion and we will not disturb it on appeal.

[6] The highest value comparable sale was located at 28 Fitchburg Street and sold at $176.53 per square foot. Assertions by Somerville that the judge abused his discretion in admitting evidence regarding post COVID-19 real estate sales are misguided. Somerville did not object to the introduction of such sales at trial and has therefore waived this issue.

11

rounding down the $176.53 square foot value to $176 per square foot for simplicity at trial.  Therefore, the jury's final verdict reflected that they understood the appropriate calculation and applied it accordingly.  See Agoos Leather Cos., Inc. v. American & Foreign Ins. Co., 342 Mass. 603, 610 (1961) ("The jury may apply their experience and judgment in determining whether and to what extent such evidence is to be given weight in the circumstances").

Judgment affirmed.

Order denying motion for new trial affirmed.

By the Court (Vuono, Neyman & D'Angelo, JJ.[7]),

Clerk

Entered:  October 16, 2024.

---

[7] The panelists are listed in order of seniority.